Karen SCHILL, Traci Pronga, Kimberly Martin, Robert Dresser and Mark Larson, Plaintiffs-Appellants,

v.

WISCONSIN RAPIDS SCHOOL DISTRICT and Robert Crist, Defendants-Respondents,

Don BUBOLZ, Intervenor-Respondent.

Supreme Court

*No. 2008AP967–AC. Oral argument November 10, 2009. —Decided July 16, 2010.*

2010 WI 86

(Also reported in 786 N.W.2d 177.)

572

For the plaintiffs-appellants there were briefs by *Jina L. Jonen* and the *Wisconsin Education Association Council,* Madison, and oral argument by *Jina L. Jonen.*

For the defendants-respondents there were briefs by *Robert W. Burns, Geoffrey A. Lacy,* and *Davis & Kuelthau, S.C.,* Green Bay, and oral argument by *Robert W. Burns.*

An amicus curiae brief was filed by *Grant F. Langley,* city attorney and *Melanie R. Swank,* assistant city attorney, Milwaukee; and *Michael P. May,* city attorney and *Roger A. Allen,* assistant city attorney, Madison, on behalf of the Office of the Milwaukee City Attorney and the Office of the Madison City Attorney.

An amicus curiae brief was filed by *Andrew T. Phillips, Patrick C. Henneger,* and *Centofanti Phillips, S.C.,* Mequon, on behalf of the Wisconsin Counties Association.

An amicus curiae brief was filed by *Bruce F. Ehlke* and *Ehlke, Gartzke, Bero-Lehmann & Lounsbury, S.C.,* Madison, on behalf of AFSCME District Council 40.

An amicus curiae brief was filed by *Tamara B. Packard, Lester A. Pines,* and *Cullen Weston Pines & Bach LLP,* Madison, on behalf of Madison Teachers, Inc.

An amicus curiae brief was filed by *Robert J. Dreps* and *Godfrey & Kahn, S.C.,* Madison, and *Jennifer L. Peterson* and *Journal Communications, Inc.,* Milwaukee, on behalf of the Wisconsin Freedom of Information Council, the Wisconsin Broadcasters Association, the Wisconsin Newspaper Association, the Milwaukee Journal Sentinel, Journal Broadcast Group, Inc., and the Associated Press.

An amicus curiae brief was filed by *Jennifer Sloan Lattis,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general, on behalf of the Department of Justice.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. If Wisconsin were not known as the Dairy State it could be known, and rightfully so, as the Sunshine State. All branches of Wisconsin government have, over many years, kept a strong commitment to transparent government.

■

¶ 2. Open records and open meetings laws, that is, "Sunshine Laws," "are first and foremost a powerful tool for everyday people to keep track of what their government is up to. . . . The right of the people to monitor the

people's business is one of the core principles of democracy."[1]

¶ 3. The legislature states the importance of open government and open records this way: "[I]t is . . . the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts" of government officers and employees.[2]

¶ 4. The court is asked in the instant case to apply the Public Records Law to e-mails, a technology not contemplated when the legislature enacted the Public Records Law.

¶ 5. When the Public Records Law was enacted, government employees no doubt wrote occasional personal notes in the workplace but mailed them, threw them away, or took them home. Now, these same kinds of personal communications are more likely to be created and saved on government-maintained computer networks. As a part of normal workplace operation, many government offices, like many private employers, have chosen to allow their employees to send and receive occasional personal messages on the employer's e-mail system.

¶ 6. There are good reasons why employers allow this practice. E-mail can enhance a worker's productivity. It is often the fastest and least disruptive way to do a brief personal communication during the work day, and employees who are forbidden or discouraged from occasional personal use of e-mail may simply need to

---

[1] Editorial, *Shine Light on Public Records,* Wis. State J., Mar. 14, 2010, at B1. The week of March 14, 2010, was "Sunshine Week." *See* http://www.sunshineweek.org/About.aspx (last visited July 9, 2010).

[2] Wis. Stat. § 19.31 (2007–08).

take more time out of the day to accomplish the same tasks by other means. Reasonable government workplace policies in line with private sector practice help government attract and retain skilled employees.

¶ 7. In the present case, the court is asked to decide whether the contents of government employees' personal e-mails (that is, e-mails not related to government business) should be released to the public in keeping with the purpose and policy of the Sunshine Laws that the public be fully informed about the affairs of government and the official acts of government officers and employees.

¶ 8. Several other states have already addressed this issue. Each has concluded that the contents of government employees' personal e-mails are not information about the affairs of government and are therefore not open to the public under their respective open records acts. We know of no state that has reached the conclusion that the contents of such personal e-mails should be released to members of the public.

■

¶ 9. For the reasons set forth, we too now conclude that while government business is to be kept open, the contents of employees' personal e-mails are not a part of government business. Personal e-mails are therefore not always records within the meaning of Wis. Stat. § 19.32(2) simply because they are sent and received on government e-mail and computer systems.

\* \* \* \*

¶ 10. This is an appeal from an order of the Circuit Court for Wood County, Charles A. Pollex, Judge, on certification from the court of appeals pursu-

ant to Wis. Stat. § 809.61 (2007–08).[3] The circuit court ordered the Wisconsin Rapids School District to release to the record requester all e-mails of Karen Schill, Traci Pronga, Kimberly Martin, Robert Dresser, and Mark Larson (the Teachers), who are employed as teachers by the School District.[4]

¶ 11. The Teachers sent and received e-mails for personal use as well as professional use, using the school district e-mail accounts and District-owned computers during the time period specified by the requester.

¶ 12. The School District's written Internet Use Policy and Guidelines permit employees to use their district e-mail accounts for occasional personal use limited to times that do not interfere with the user's job responsibilities. Users of the School District's network and e-mail accounts are advised that "[a]ll district assigned e-mail accounts are owned by the district and, therefore, are not private"; that the School District "has an obligation to monitor network activity to maintain the integrity of the [network] and ensure adherence to district policies"; and that "the Network manager will

---

[3] All references to the Wisconsin Statutes are to the 2007–08 version, unless otherwise indicated.

[4] Chief Justice Abrahamson's lead opinion is joined by Justice N. Patrick Crooks and Justice David T. Prosser. Justice Bradley and Justice Gableman conclude that the contents of e-mails that are at issue here are records as defined by the statute. Justice Bradley concludes, as does the lead opinion, that once the custodian determines that the contents of certain e-mails are purely personal and evince no violation of law or policy, the custodian does not undertake a balancing of each request. The lead opinion, Justice Bradley, and Justice Gableman all conclude that the custodian should not release the contents of e-mails that are purely personal and evince no violation of law or policy. Thus five justices conclude that a custodian should not release the contents of e-mails that are purely personal and evince no violation of law or policy.

not routinely inspect the contents of e-mail sent by district employees." The Internet Use Policy and the Guidelines say nothing about access to the e-mails under the Public Records Law.

¶ 13. No allegation of improper use is at issue here. The School District and the Teachers agree that the Teachers did not violate the School District's written Internet Use Policy or Guidelines and that the content of the e-mails at issue is of a purely personal nature, with no connection to a government function.

¶ 14. This case does not involve the right of the government employer to monitor, review, or have access to the personal e-mails of public employees using the government e-mail system.

¶ 15. Rather, this case involves the right of a third party, a record requester, to review under the Public Records Law the personal e-mails of public sector employees who use government e-mail accounts and computers.[5] The status of these personal e-mails of public sector employees as records is a question of first impression in Wisconsin.

¶ 16. More specifically, this case poses the question of whether the contents of the Teachers' personal e-mails are records available to a requester under the Public Records Law, Wis. Stat. §§ 19.31–.39, where the e-mails are sent or received on government e-mail

---

[5] For purposes of this opinion, we refer to Wis. Stat. §§ 19.31–.39 as the "Public Records Law," although it is sometimes referred to as the "Open Records Law." Wisconsin Stat. §§ 16.61–.62, addressing, *inter alia,* retention and preservation of documents, and also sometimes referred to as the "Public Records Law," is not involved in the instant case. The questions of whether a record or document must be retained and whether it is subject to release present different issues than presented in an open record request. *See State ex rel. Gehl v. Connors,* 2007 WI App 238, ¶ 13, 306 Wis. 2d 247, 742 N.W.2d 530.

accounts and created or maintained on government-owned computers pursuant to the employer's permission for occasional personal use, and the content has no connection to a government function. We use the phrase "no connection to a government function" (and sometimes the phrase "work-related") as a short-hand for the phrases in Wis. Stat. § 19.31, "the affairs of government," "the official acts of officers and employees," and "the conduct of governmental business," which underlie the purpose for giving public access to documents. We need not, and do not, describe the contours of "connection to a government function" in this case because the parties agree that the contents of the e-mails at issue have no such connection.

¶ 17. This case has been presented raising only the question of whether the contents of public employees' personal e-mail communications created or stored on a government-owned system are "records" under the Wisconsin Public Records Law. The facts are not in dispute in this case. Numerous briefs filed in the instant case acknowledge explicitly or implicitly that the only e-mails at issue are those whose contents relate exclusively to personal matters. The release of e-mails whose contents relate to government business is not at issue in the instant case.

¶ 18. No one has asked the circuit court or this court to examine the contents of the e-mails in camera to determine whether the contents are personal or relate to government business or are a mixture of the two. Don Bubolz, the person who made the record request and is named as an intervenor in this proceeding, filed a response in the circuit court and a brief in the court of appeals, both of which this court has considered. Mr. Bubolz wants the contents of *all* of the Teachers' e-mails to be declared records under the Law,

regardless of whether the contents are personal or relate to government business.[6]

■

¶ 19. The interpretation and application of the Public Records Law is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from the analyses of these courts.[7]

■

¶ 20. If the contents of the Teachers' personal e-mails are records under the Public Records Law, then the court must undertake a balancing test to decide whether the statutory presumption favoring disclosure of public records is outweighed by any other public interest.[8]

¶ 21. In keeping with the court's past interpretations of the Public Records Law, we explore various avenues to interpret the word "record" as defined in

[6] Unfortunately, the dissent distorts the issue presented by the parties and addressed by the court. The issue is not, as the dissent would portray it, a dispute about whether the contents of the teachers' e-mails are truly personal or are actually related to government business.

[7] *Hempel v. City of Baraboo,* 2005 WI 120, ¶ 21, 284 Wis. 2d 162, 699 N.W.2d 551.

[8] Where documents are public records not subject to a statutory or common-law exception to disclosure requirements, "the balancing test must be applied in every case in order to determine whether a particular record should be released." *Woznicki v. Erickson,* 202 Wis. 2d 178, 183, 549 N.W.2d 699 (1996) (quoting *Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls,* 199 Wis. 2d 768, 781, 546 N.W.2d 143 (1996)). The balancing test inquires "whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection." *Woznicki,* 202 Wis. 2d at 183–84.

Wis. Stat. § 19.32(2), including the text of Wis. Stat. § 19.32(2); the text of Wis. Stat. § 19.31, the legislature's explicit statement of its intent, the statutory purpose and policy, and the construction of the Public Records Law; the statutory history and case law interpretations of prior versions of the statute; the executive branch interpretations of the definition of "records" (especially the opinions of the attorney general); the legislative failure to amend § 19.32(2); other states' interpretations of their open records laws; and the consequences for custodians of records of interpreting Wis. Stat. § 19.32(2) to exclude the content of the Teachers' personal e-mails.

■■

¶ 22. All these avenues of interpretation lead to one conclusion: In determining whether a document is a record under Wis. Stat. § 19.32(2), the focus is on the content of the document. To be a record under § 19.32(2), the content of the document must have a connection to a government function.

¶ 23. In the instant case, the contents of the Teachers' personal e-mails have no connection to a government function and therefore are not records under Wis. Stat. § 19.32(2). The contents of personal e-mails could, however, be records under the Public Records Law under certain circumstances. For example, if the e-mails were used as evidence in a disciplinary investigation or to investigate the misuse of government resources, the personal e-mails would be records under the Wis. Stat. § 19.32(2). A connection would then exist between the contents of the e-mails and a government function, namely the investigations.[9]

---

[9] *See, e.g., Zellner v. Cedarburg Sch. Dt.,* 2007 WI 53, 300 Wis. 2d 290, 731 N.W.2d 240 (a discipline case). *Zellner* does not apply in the instant case. There are no allegations of misconduct and no disciplinary proceeding occurred.

¶ 24. The contents of the personal e-mails that the Teachers created and maintained on government-owned computers pursuant to the government employer's permission for occasional personal use of the government e-mail account and computer are not "records" under Wis. Stat. § 19.32(2). The personal contents of these e-mails are not subject to release to a record requester merely because they are sent or received using the government employers' e-mail systems and then stored and maintained on those systems. Because we conclude that the contents of the Teachers' personal e-mails are not "records" under the Public Records Law, we need not reach the question of balancing the public interest favoring disclosure with any other public interest.

¶ 25. For the reasons set forth, we reverse the order of the circuit court and remand the cause to the circuit court to enjoin the School District from releasing the contents of the Teachers' personal e-mails.

I

¶ 26. The relevant facts are not in dispute. Don Bubolz, the records requester, filed a request with the School District pursuant to the Public Records Law.[10]

The public has an interest in monitoring how the resources it finances are used by government employees and in reviewing the conduct of disciplinary investigations. In several cases materials constituted records under Wis. Stat. § 19.32(2) when such materials were implicated in investigations into alleged misconduct. *See, e.g., Linzmeyer v. Forcey,* 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811; *Armada Broadcasting, Inc. v. Stirn,* 183 Wis. 2d 463, 516 N.W.2d 357 (1994).

[10] Wisconsin Stat. § 19.35 authorizes such requests: "Except as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a). The statute also provides that: "any requester has a right to inspect

He requested e-mails for the period from March 1, 2007 through April 13, 2007 "from the computers [the Teachers] use during their school work day."

¶ 27. The School District notified the Teachers that it intended to release all of their e-mails to the requester, regardless of content.[11]

¶ 28. The Teachers did not object to the release of their work-related e-mails, that is, e-mails with a connection to school district affairs or their official actions as public employees. The Teachers acknowledge that the public interest in monitoring appropriate use of e-mail and computer systems and compliance with policies limiting personal e-mail use could be satisfied by release of statistical information, including the num-

---

a record and to make or receive a copy of a record which appears in written form," Wis. Stat. § 19.35(1)(b), and that "no request . . . may be refused because the person making the request is unwilling to be identified or to state the purpose of the request. Wis. Stat. § 19.35(1)(i).

In the instant case, the requester described his request in a number of ways: He had a right to see the personal e-mails because the taxpayers paid for the equipment; the Teachers' e-mails were official acts because they were sent on taxpayer time using taxpayer equipment; he needed to see the personal content of the e-mails to determine whether the Teachers violated the School District policy regarding use of the computer; and he needed to determine whether the Teachers used the e-mails to discuss elections of school board candidates. None of the e-mails at issue here relate to school board candidates. The Teachers have not objected to the release of any e-mails relating to school business.

At the circuit court, the requester stated that he was on a "fishing mission" to see how often the Teachers were using the school e-mails for personal use.

[11] The issue of whether the notice was required under Wis. Stat. § 19.356 is not before the court.

589

ber of e-mails (personal and business) and the time and dates of the personal e-mails over the specified period, or by redacting all personal content and releasing only the time and date at which e-mails were sent. The Teachers claim that although a record requester may have a legitimate public interest in knowing whether a public employee is violating School District policies or misusing public resources on taxpayer-paid work time, the Teachers' volume of e-mail use could easily be disclosed without disclosing the contents of the personal e-mails.

¶ 29. The Teachers commenced this action in the circuit court to enjoin the School District from releasing the contents of their personal e-mails, that is, e-mails that contain only personal information, whose contents have no connection to a governmental function. These personal e-mails include such messages as an e-mail from a teacher to her spouse about child care responsibilities and an e-mail from a friend to a teacher regarding social plans. The Teachers assert that an intrusion on their privacy should not occur simply by virtue of a computer system's ability to store information.

¶ 30. It is uncontested that the Teachers' personal e-mails at issue were not prepared for work-related purposes. It is also uncontested that the contents of the e-mails at issue do not relate to the school district or government affairs or any official actions of the Teachers or other public officers or employees or the conduct of governmental business. Neither the Teachers nor the School District relied on the e-mails to make school district or government-related decisions.

¶ 31. The circuit court concluded that the Teachers' personal e-mails were records under the statute. It then applied the balancing test and concluded that the personal e-mails should be disclosed.

¶ 32. The circuit court ordered that sensitive information, including pupil records, medical information, social security numbers, bank account information, home addresses, and telephone numbers be redacted upon disclosure. Redaction of this information is not at issue here.

¶ 33. The Teachers appealed. The court of appeals certified the case to this court.

¶ 34. In September 2009, after the Teachers and the School District finished their briefing, a number of non-party briefs were filed. Several media entities—the Wisconsin Freedom of Information Council, the Wisconsin Broadcasters Association, the Wisconsin Newspaper Association, the Milwaukee Journal Sentinel, Journal Broadcast Group, Inc., and the Associated Press—joined in filing one brief. The Wisconsin Department of Justice, Madison Teachers, Inc., AFSCME District Council 40, the Offices of the Milwaukee and Madison City Attorneys, and the Wisconsin Counties Association each filed a non-party brief.

¶ 35. The briefs of the Media Entities and the Department of Justice challenged for the first time the circuit court's competence to hear the Teachers' action. They interpret Wis. Stat. § 19.356 as limiting judicial review of the disclosure of records under the Public Records Law. Neither the Teachers nor the School District, nor any other entity, had argued the issue of the Teachers' right to judicial review. The other non-party briefs argue that the personal e-mails in the instant case are not records under Wis. Stat. § 19.32(2).

¶ 36. At this court's request, the Teachers and the School District filed supplemental briefs addressing these late-rising issues, namely (1) whether the Teachers have standing to pursue the claims they raised in circuit court; (2) whether the circuit court had subject

591

matter jurisdiction and was competent to proceed with those claims; and (3) whether this court has subject matter jurisdiction and is competent to proceed with a review of those claims. Both the Teachers and the School District urge the court to decide the substantive legal issue posed in the instant case, namely whether the personal e-mails of the Teachers are "records" within the Public Records Law.

## II

¶ 37. As an initial matter, we determine the issues of standing and competence.

¶ 38. Whether a party has standing is a question of law that this court determines independent of the circuit court or court of appeals but benefitting from their analyses.[12] Wisconsin courts evaluate standing as a matter of judicial policy rather than as a jurisdictional prerequisite.[13] Courts construe standing broadly in favor of those seeking access.[14] A person has standing to seek judicial review when that person has a personal stake in the outcome and is directly affected by the issues in controversy.[15]

¶ 39. The Teachers have a personal stake in the outcome in the present case and are directly affected by

---

[12] *State v. Popenhagen,* 2008 WI 55, ¶ 23, 309 Wis. 2d 601, 749 N.W.2d 611.

[13] *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, ¶ 38 n.7, 244 Wis. 2d 333, 627 N.W.2d 866.

[14] *Popenhagen,* 309 Wis. 2d 601, ¶ 24 (citing *Bence v. City of Milwaukee,* 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982)).

[15] *Popenhagen,* 309 Wis. 2d 601, ¶ 24; *Bence v. City of Milwaukee,* 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982).

a determination of whether their personal e-mails are records under the Public Records Law. In *Zellner v. Cedarburg School District,* 2007 WI 53, ¶¶ 2, 3, 21, 300 Wis. 2d 290, 731 N.W.2d 240, the court held that a teacher had standing to argue that certain materials are not "records" under the Public Records Law. We determined in *Zellner,* 300 Wis. 2d 290, ¶ 21, that the teacher "will be impacted personally by this court's holding in regard to the requested release, and his interests were adversely affected by the circuit court decision [to release the record]." The same is true here. We therefore conclude that the Teachers have standing.

■

¶ 40. With regard to the competence of the circuit court, the Department of Justice and the Media Entities argue that under Wis. Stat. § 19.356(1) the circuit court was not competent to rule on the Teachers' claims.[16] The crux of their argument is that Wis. Stat. § 19.356(1) limits the classes of litigants who are entitled to judicial review. The statute provides that except as provided in § 19.356 or by other statute, an authority is not required to give notice to a record subject (here the Teachers) of its intent to provide access to the requested record except in three limited circumstances, and that except as provided, *"no person is entitled to judicial review of the decision of an authority to provide a requester with access to a record"* (emphasis added).

---

[16] In Wisconsin, a circuit court's subject matter jurisdiction is conferred by the state constitution. There is no question that the circuit court had subject matter jurisdiction in the present case. The circuit court's ability to exercise that subject matter jurisdiction, that is, the circuit court's competency to proceed to judgment, may be affected by the failure to comply with statutory requirements. *Village of Trempealeau v. Mikrut,* 2004 WI 79, ¶¶ 2, 8, 273 Wis. 2d 76, 681 N.W.2d 190.

The three limited exceptions to the notice requirement set forth in § 19.356 are confined to (1) disciplinary or investigation records; (2) records obtained by a subpoena or search warrant; and (3) records prepared by a private sector employer relating to its employee.[17]

¶ 41. Section 19.356(1) and (2) provide as follows:

Wis. Stat. § 19.356 Notice to record subject; right of action. (1) Except as authorized in this section or as otherwise provided by statute, no authority is required to notify a record subject prior to providing to a requester access to a record containing information pertaining to that record subject, and *no person is entitled to judicial review of the decision of an authority to provide a requester with access to a record.*

(2)(a) Except as provided in pars. (b) and (c) and as otherwise authorized or required by statute, if an authority decides under s.19.35 to permit access to a record specified in this paragraph, the authority shall, before permitting access and within 3 days after making the decision to permit access, serve written notice of that decision on any record subject to whom the record pertains, either by certified mail or by personally serving the notice on the record subject. The notice shall

---

[17] The School District argues that it had the right to release the records without giving the Teachers prior notice but also had discretion to provide notice to the Teachers of its intent to release the records.

The District also contends that the statute stating that an individual is "entitled" to judicial review only when a request for records is made that fits within the statute's three circumstances does not preclude that person's ability to seek judicial review under other circumstances. The School District asserts that this approach harmonizes Wis. Stat. § 19.356 and this court's reasoning in *Woznicki v. Erickson,* 202 Wis. 2d 178, 549 N.W.2d 699 (1996).

briefly describe the requested record and include a description of the rights of the record subject under subs. (3) and (4). The paragraph applies only to the following records:

1. A record containing information relating to an employee that is created or kept by the authority and that is the result of an investigation into a disciplinary matter involving the employee or possible employment-related violation by the employee of a statute, ordinance, rule, regulation, or policy of the employee's employer.

2. A record obtained by an authority through a subpoena or search warrant.

3. A record prepared by an employer other than an authority, if that record contains information relating to an employee of that employer, unless the employee authorizes the authority to provide access to that information (emphasis added).

¶ 42. The legislature apparently adopted Wis. Stat. § 19.356 in 2003 to narrow and codify the notice and judicial review rights set forth in *Woznicki v. Erickson,* 202 Wis. 2d 178, 549 N.W.2d 699 (1996).[18]

¶ 43. The Teachers argue that the circuit court was competent to proceed in the instant case because

_____

[18] In *Woznicki,* the court held that "an individual whose privacy or reputational interests are implicated by the . . . potential release of his or her records has a right to have the circuit court review the . . . decision to release the records . . . ." *Woznicki,* 202 Wis. 2d at 193.

Wisconsin Stat. § 19.356 resulted from the study of the Special Committee on Review of the Open Records Law. *See* Wisconsin Legislative Council Report to the Legislature, March 25, 2003, *available at* http://www.legis.state.wi.us/lc/committees/study/prior/files/rl2003_01.pdf (last visited July 9, 2010).

the Teachers come within one of the three circumstances set forth in Wis. Stat. § 19.356, providing for notice by the employer and judicial review. The Teachers argue that upon receiving notice from the School District that their personal e-mails were being released, they reasonably assumed that the e-mails were part of a disciplinary inquiry into whether the Teachers had violated the School District's e-mail policy.[19]

¶ 44. The Teachers and the School District want this court to decide the substantive issue about the personal e-mails. The substantive issue is important to record custodians, record subjects, and record request-

The Joint Legislative Council Prefatory Note to 2003 Wis. Act 47 states the purpose of Wis. Stat. § 19.356 as follows:

> This bill partially codifies *Woznicki* and *Milwaukee Teachers'*. In general, the bill applies the rights afforded by *Woznicki* and *Milwaukee Teachers'* only to a defined set of records pertaining to employees residing in Wisconsin. As an overall construct, records relating to employees under the bill can be placed in the following 3 categories:
>
> 1. Employee-related records that may be released under the general balancing test without providing a right of notice or judicial review to the employee record subject.
>
> 2. Employee-related records that may be released under the balancing test *only* after a notice of impending release and the right of judicial review have been provided to the employee record subject.
>
> 3. Employee-related records that are absolutely closed to public access under the open records law.

[19] The Teachers assert in the alternative that the circuit court was competent to adjudicate the Teachers' claims pursuant to a writ of mandamus under Wis. Stat. § 783.01; the Teachers had requested a writ of mandamus ordering that the personal e-mails are not records subject to release. We do not address whether the writ was an available alternative here.

ers alike.[20] Personal e-mail communications of government employees are frequent occurrences, and every day in Wisconsin numerous custodians of records receive, analyze, and must respond to requests to inspect material, including e-mails.

¶ 45. Until the nonparty briefs were filed in this court, no party or nonparty had contested the competence of the circuit court to provide judicial review. Because the issue of the circuit court's competence was never raised in the circuit court, we treat the issue as having been forfeited.[21] To allow *amici* to raise this

---

[20] The School District's brief argued that "this is a matter of importance about which [records] custodians require guidance." The School District also recognized that the certification to this court by the court of appeals identified the need to create a "workable set of guidelines for records custodians to apply," and argued that precluding judicial review in this case would place the district in an untenable position of either denying access and thus forcing the requester to seek a writ of mandamus to compel release, or simply releasing the e-mails and waiting for the Teachers to file suit after an intrusion on its employees' privacy interests had already occurred.

[21] Forfeiture is the failure to make the timely assertion of a right. Although cases sometimes use the words "forfeiture" and "waiver" interchangeably, the two words embody very different legal concepts. Waiver is the intentional relinquishment or abandonment of a known right. *State v. Ndina,* 2009 WI 21, ¶¶ 29–30, 315 Wis. 2d 653, 761 N.W.2d 612. The present case raises the question of forfeiture, not waiver.

Forfeiture is a rule of judicial administration. It is a fundamental principle of appellate review that issues must be preserved at the circuit court to be raised on appeal as a matter of right. If the issue is not preserved, an appellate court may consider the issue forfeited. The forfeiture rule gives the parties and the circuit court notice of the issue and a fair opportunity

issue at this late date, contrary to the wishes of the parties, would be contrary to the principles of fairness and the policies of judicial administration that the forfeiture rule protects. Consequently, we do not address the issue of the competence of the circuit court to provide judicial review in the present case.

■■

¶ 46. With regard to the competence of this court and the court of appeals, the circuit court's order to release the personal e-mails is a final and binding order for purposes of appeal. When this court grants review on certification it acquires jurisdiction of the entire case. No one asserts a failure to comply with any statutory procedure to invoke the jurisdiction of the court of appeals or this court. We therefore proceed to answer the important substantive question presented in this case.

### III

■■

¶ 47. Whether the Teachers' personal e-mail communications on government computers are records under Wis. Stat. § 19.32(2) for purposes of the Public Records Law is a matter of statutory interpretation. The question posed is whether the statutory definition of "record" in Wis. Stat. § 19.32(2) includes the Teachers' personal e-mails.

¶ 48. The statutory definition does not refer explicitly to e-mails. The definition of "record" at issue was

---

to address it; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal. *Mikrut,* 273 Wis. 2d 76, ¶ 15 (citing *State v. Huebner,* 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727).

adopted effective January 1, 1983,[22] long before e-mail and mass storage of electronic data were ubiquitous within and outside of government. Therefore we must interpret and apply a statutory text to a factual situation not explicitly encompassed in the statute and apparently not contemplated by the legislature, a relatively common occurrence in the judicial interpretation of statutes.

¶ 49. In keeping with the court's past interpretations of the Public Records Law and with the provisions of the Public Records Law, we approach the statutory interpretation of the word "record" in Wis. Stat. § 19.32(2) as follows:

 A. We examine first the text of Wis. Stat. § 19.32(2) defining "record" for purposes of the Public Records Law. The text is not definitively determinative of the question posed.

 B. For guidance in interpreting the meaning of the word "record," we turn to Wis. Stat. § 19.31, the legislature's explicit statement of its intent, the statutory purpose and policy, and its direction regarding the construction of the Public Records Law. The legislature's statement supports the requirement that to be a "record," the content of a document must have a connection to a government function, that is, the content must relate to "the affairs of government," "the official acts" of officers and employees, or "the conduct of governmental business."

 C. Statutory language is interpreted in relation to the language of closely related statutes. The lesson learned from examining the prior public records statutes and case law is that documents with no

---

[22] *See* 1981 Act 335 (published May 6, 1982; eff. Jan. 1, 1983).

connection to government functions are not "records" within the Public Records Law.

D. Statutory interpretation may be informed by executive branch interpretations of a statute. The opinions of the Wisconsin Attorney General are especially helpful in deciphering the definition of "record" in Wis. Stat. § 19.32(2). The Public Records Law has long been interpreted and administered to exclude from the meaning of "record" documents of purely personal content, sometimes referred to as "fugitive papers."

E. Statutory interpretation may be informed by the legislative history of the definition of "record" in Wis. Stat. § 19.32(2). The legislative history supports interpreting "record" in Wis. Stat. § 19.32(2) as requiring the content of a document to have a connection to a government function.

F. Statutory interpretation of the Wisconsin Public Records Law may be informed by the interpretations of other states of their open records laws. No states have been cited as including the contents of purely personal e-mails in their open records laws.

G. The legislature would not have intended a court's interpretation of the word "record" in Wis. Stat. § 19.32(2) to impose an unreasonable burden on custodians of records. Interpreting the definition of record in Wis. Stat. § 19.32(2) to exclude e-mails of purely personal content does not impose an unreasonable administrative burden on custodians of records.

A

¶ 50. We examine first the text of Wis. Stat. § 19.32(2) defining "record" for purposes of the Public Records Law, Wis. Stat. §§ 19.33 to 19.39.

¶ 51. To determine whether particular materials are or are not records, Wis. Stat. § 19.32(2) provides guidance by defining "record" in three parts: (1) by stating a general description of a record; (2) by providing a non-exhaustive list illustrating specific types of records; and (3) by providing a description and non-exhaustive list of items that are excluded from the definition and therefore are not records.

¶ 52. The first part of Wis. Stat. § 19.32(2) states that " 'Record' means *any material* on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been *created* or is being *kept* by an *authority*" (emphasis added).

¶ 53. The second part of Wis. Stat. § 19.32(2) more specifically enumerates several types of materials included as records. E-mails are not listed.

¶ 54. The third part of Wis. Stat. § 19.32(2) describes materials that are excluded from the definition of a "record." As relevant here, " 'Record' does not include *drafts, notes,* preliminary computations and *like materials prepared for the originator's personal use* or prepared by the originator in the name of a person for whom the originator is working" (emphasis added).

¶ 55. The complete text of Wis. Stat. § 19.32(2) (formatted for clarity) is as follows:

[1]"Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority.

[2]"Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks.

[3]"Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

¶ 56. The Teachers and the School District agree, as do we, that e-mails can fall within the first part of Wis. Stat. § 19.32(2)'s description of materials that may be "records." The personal e-mails at issue were created by the Teachers. The School District, not the Teachers, is an "authority" within the meaning of the statute and the e-mails are stored on computers owned by the School District.[23]

¶ 57. The second part of the definition of "record" in Wis. Stat. § 19.32(2) sets forth a non-exhaustive list of 10 illustrations of items that are included within the word "record." " 'Record' includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks." This more specific enumeration does relatively little to illuminate our inquiry into whether the Teachers' personal e-mails are records.

¶ 58. The third part of the definition of "record" in Wis. Stat. § 19.32(2) excludes from the definition of records both (1) "materials which are purely the personal property of the custodian and have no relation to

---

[23] *See* Wis. Stat. § 19.32(1) for the definition of "authority."

his or her office," and (2) "drafts, notes, preliminary computations and like materials prepared for the originator's personal use."

¶ 59. As a preliminary matter, it is clear that some materials that fall within the broad description of records in the first or second parts of Wis. Stat. § 19.32(2) may be specifically excluded by the third part of § 19.32(2). If a document falls within an exception, it is not a "record." Exceptions are to be narrowly construed.[24]

¶ 60. There is a question whether the Teachers' personal e-mails fall within the exception of materials that are "purely the personal property of the custodian and have no relation to his or her office." The School District's record custodian is Dr. Robert Crist, the Superintendent of Schools; the Teachers are not the custodians of the e-mails.

¶ 61. The legislative intent may have been to exclude from the word "record" personal property of any government employee (rather than merely the personal property of the custodian) that has no relation to his or her employment. One commentator observed that this language relating to the personal property of the custodian was added in 1983 "as a refinement of earlier case law which recognized some materials to be 'fugitive papers' and indicated that if such items had no relation to the function of the office, there was no requirement that they be kept as a public record."[25] We discuss the

[24] *Fox v. Bock,* 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989).

[25] Linda de la Mora, *The Wisconsin Public Records Law,* 67 Marq. L. Rev. 65, 90 (1983).

"fugitive papers" exception to records later in our analysis. *See infra* ¶¶ 97–99, 101–102, 104.

¶ 62. We turn to whether the Teachers' personal e-mails fall within the exception for "notes," "drafts," or "like materials prepared for the originator's personal use." The words "notes," "drafts," and "like materials" should each be given distinct meanings, to avoid redundancy or "surplusage."[26]

¶ 63. We agree with the School District that the Teachers' personal e-mails do not fit easily into the statutory exclusion for "drafts." The Teachers' personal e-mails are final work products.

¶ 64. The word "notes" is susceptible of more than one meaning. The word ordinarily refers to a brief, informal document. An e-mail may well fit within this meaning.

¶ 65. The School District, however, urges a different meaning of "notes," arguing that this exclusion from the definition of "record" should be limited to materials that are in preliminary draft form and that the Teachers' e-mails are documents in "final form."

¶ 66. The meaning of "like materials" is hardly self-explanatory. When two or more words or phrases

The Teachers reason that just as an authority cannot circumvent the Public Records Law by putting public records in the possession of a private entity, *see WIREdata Inc. v. Village of Sussex,* 2008 WI 69, ¶ 82, 310 Wis. 2d 397, 751 N.W.2d 736, private transmissions do not become records under the Public Records Law by virtue of their storage on government e-mail systems.

[26] *Pawlowski v. Am. Family Mut. Ins. Co.,* 2009 WI 105, ¶ 22, n.14, 322 Wis. 2d 21, 777 N.W.2d 67 (citing *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980)).

are listed together, the general terms (in the instant case, "like materials") may be defined by the other words and understood in the same general sense. This canon of construction is known in Latin as *noscitur a sociis*, "it is known from its associates," and its variation *ejusdem generis*.[27] These canons, like all canons of statutory construction, are instructive "only if the result is consistent with the legislative intent."[28] Thus, "[t]hat a word may be known by the company it keeps is . . . not an invariable rule, for the word may have a character of its own not to be submerged by its association."[29]

¶ 67. The words "like materials" plainly describe materials that are "like" notes and drafts but are not, by themselves, either of those things. The phrase therefore describes some broader set of materials that is "prepared for the originator's personal use."

¶ 68. We turn then to the phrase "prepared for the originator's personal use." The School District suggests that "personal" refers to the intended use of the material, not the content of the material. The School District contends that when the e-mail is sent, regardless of content, the communication is no longer "prepared for the originator's personal use" but is also intended for and prepared for the use of others, namely the recipient(s) of the e-mail. In contrast, the Teachers argue that a more logical reading of the words "for the

---

[27] *See Popenhagen*, 309 Wis. 2d 601, ¶ 46 & n.25; 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47:16, 347–54 (2007).

[28] 2A Singer & Singer, *supra* note 27, § 47:16, 354.

[29] *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923).

personal use of the originator" is to distinguish between materials with work-related content and those with personal content.

¶ 69. For support of its interpretation of "prepared for the originator's personal use," the School District looks to *State v. Panknin,* 217 Wis. 2d 200, 212–13, 579 N.W.2d 52 (Ct. App. 1998), in which the court of appeals held that personal notes of a circuit court judge, even when "work related," were not records under the Public Records Law, but were instead a "voluntary piece of work completed by the trial court for its own convenience and to facilitate the performance of its duties."[30] The *Panknin* court held that such notes did not have to be disclosed under the public records law "because disclosure would impede the work habits of the trial court."[31]

¶ 70. The School District urges that the Teachers' personal e-mails are not analogous to a judge's notes in *Panknin,* because the e-mails are not private working documents created for the Teachers' own convenience. An e-mail that is sent to another person, according to the School District, is not prepared for the originator's personal deliberation, and therefore falls outside the meaning of "prepared for the originator's personal use."

¶ 71. The School District also relies on *Fox v. Bock,* 149 Wis. 2d 403, 408, 417, 438 N.W.2d 589 (1989), for the proposition that once a draft or preliminary computation is circulated or used by others, it becomes a record under the Public Records Law. The *Fox* court held that regardless of whether the document was labeled a draft, once a government entity had begun

---

[30] *State v. Panknin* 217 Wis. 2d 200, 212, 579 N.W.2d 52, 58 (Ct. App. 1998).

[31] *Id.*

taking official actions based on the document's suggestions, the document became a record. The *Fox* court refused to allow the label of "draft" to exclude the document from the Public Records Law. That the report "aroused official action" indicated that the "draft" was for government, not personal, use, declared the *Fox* court, 149 Wis. 2d at 417.

¶ 72. The Teachers read *Fox* to indicate that the focus of "personal use" in determining whether a document is a record under the third part of the definition of "record" in Wis. Stat. § 19.32(2) is on whether the content of the document has been connected to an official function. They argue that materials become records when they serve a governmental purpose rather than a solely personal purpose of the originator.

¶ 73. The Teachers argue that *Fox* means that documents used for a government purpose are records, but that merely using the government e-mail system does not transform private communications into "records" under Wis. Stat. § 19.32(2). "It is the nature of the documents and not their location that determines their status under [the Public Records Law]. To conclude otherwise would elevate form over substance." *Nichols v. Bennett,* 199 Wis. 2d 268, 274–75, 544 N.W.2d 428 (1996).

¶ 74. Although both offer insights, neither *Panknin* nor *Fox* is determinative of whether the Teachers' personal e-mails fall within the statutory phrase "for the personal use of the originator."

¶ 75. Both the School District and the Teachers make persuasive arguments about the correct interpretation of the text of Wis. Stat. § 19.32(2). To properly interpret the word "record" in § 19.32(2) we therefore look further to other sources we have traditionally used to interpret the public records law. First we look to Wis.

607

Stat. § 19.31, which encompasses the legislative statement of intent, purpose, policy, and direction regarding the construction of the statute as aids in interpreting the definition of "record" in the Public Records Law.

## B

¶ 76. In enacting the Public Records Law, the Legislature provided an explicit statement of its intent and the policies and purposes underlying the Public Records Law, as well as directions regarding a presumption to be used in the interpretation of the Law. In Wis. Stat. § 19.31, the Declaration of Policy, the legislature has declared that "all persons are entitled to the greatest possible information regarding the affairs of government" and that the Public Records Law "shall be construed in every instance with a presumption of complete access, consistent with the conduct of government business." The text of § 19.31 is an important aid in interpreting the meaning of "record" in § 19.32(2).

¶ 77. The full legislative directive in Wis. Stat. § 19.31 is as follows:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business.

The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

¶ 78. Statutory interpretation strives to give "full, proper, and intended effect" to the law we are interpreting.[32] The Teachers argue, and we agree, that publicly disclosing the contents of their personal e-mails is neither a proper nor an intended effect of the Public Records Law, as articulated by the Legislature's explicit statement of legislative intent, policy, purpose, and rule of construction.

¶ 79. The clear and explicit statement of legislative intent, policy, and purpose in the Public Records Law supports the Teachers' argument that the content of a document must have a connection to a government function to constitute a record within the meaning of Wis. Stat. § 19.32(2).

¶ 80. The legislature has stated that the Public Records Law serves "an informed electorate" and that "all persons are entitled to the greatest possible information regarding the *affairs of government* and the *official acts* of those officers and employees who represent them." Wis. Stat. § 19.31. This explicit statement of legislative policy supports making available those documents whose contents are related to the affairs of government, to the official acts of officers and employees, and to "the conduct of governmental business," rather than those related solely to the private affairs of officers and employees.

¶ 81. Affairs of government and official acts include the public's ability to evaluate the use of public resources. But there is a distinction between allowing

[32] *Noffke ex rel. Swenson v. Bakke,* 2009 WI 10, ¶ 10, 315 Wis. 2d 350, 760 N.W.2d 156.

public oversight of employees' use of public resources and invoking the Public Records Law to invade the private affairs of public employees by categorically revealing the contents of employees' personal e-mails. Disclosure of the contents of the Teachers' personal e-mails does not keep the electorate informed about the government and sheds no light on "official acts" or "the affairs of government."

¶ 82. Furthermore, the legislature's rule of construction of the Public Records Law, a presumption of complete access, supports the Teachers' position. According to Wis. Stat. § 19.31, "in every instance" the law is to be construed "with a presumption of complete public access, consistent with the conduct of governmental business." The presumption of complete public access is thus not absolute. The presumption of complete public access is limited to access "consistent with the conduct of governmental business." Disclosure of the contents of the Teachers' personal e-mails is not "consistent with the conduct of governmental business."

¶ 83. Rather, disclosure of the contents of the Teachers' personal e-mails is antithetical to the conduct of governmental business. It is consistent with the conduct of governmental business to allow public employees occasional personal use of government computers and e-mail accounts consistent with their work duties. Flexible, common-sense workplace policies that allow occasional personal use of e-mail are in line with the mainstream of professional practice. In this case, the School District's Internet Use Policy and Guidelines required that "[a]ccess to e-mail on [the network] will be through the district provided account only. Other commercial e-mail services will not be allowed."

¶ 84. Occasional personal use of District e-mail accounts thus enables public employees to take care of

family and personal necessities in the office, without requiring greater interruption to the workday. E-mail often provides the quickest and simplest way to facilitate brief communications and enables employees to be more productive.

¶ 85. Forbidding employees from using work e-mail accounts for any personal communications, or making such communications automatically subject to public review, would create a perverse incentive for employees to use more time-consuming means of personal communication during the workday. Stripping a public employee of his or her privacy in the contents of personal e-mails simply because he or she works for the government might hamper productivity, negatively impact employee morale, and undermine recruiting and retention of government employees.

¶ 86. Given such considerations, the School District has made the very reasonable decision to allow occasional personal use of e-mail. Excluding the content of personal e-mails from the definition of "record" under the Public Record Law comports with the "presumption of complete public access, consistent with the conduct of governmental business." Excluding the content of the Teachers personal e-mails from "records" is the kind of common-sense, functional limit on "complete public access" expressly endorsed by the legislative statement of policy in Wis. Stat. § 19.31.

C

¶ 87. In addition to the legislative statement of intent and policy and directive as to construction of the Law, our interpretation of the definition of "record" in Wis. Stat. § 19.32(2) is informed by the prior statutes and the case law. The statutory history and the case law

611

are especially important in interpreting Wis. Stat. §§ 19.31–.39 inasmuch as our court has long relied on case law interpreting prior statutory language in interpreting the Public Records Law, and Wisconsin Stat. § 19.35(1) provides that "[s]ubstantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect."[33] The common law is therefore important in interpreting the word "record."[34]

¶ 88. Public access to government records is of long standing in Wisconsin. The Wisconsin Supreme Court recognized the right of public access to government records before any statutory enactment. Provisions relating to the public's right to review government records are found in Wis. Stat. § 18.01 (1917), which was enacted to unify a number of specific provisions relating to public officers.[35] Because the statute was

[33] *See also* Wis. Stat. § 19.356(6), stating: "The court shall apply substantive common law principles construing the right to inspect, copy, or receive copies of records in making its decision." This statute was cited in *Local 289 v. Rock County,* 2004 WI App 210, ¶ 3, 277 Wis. 2d 208, 689 N.W.2d 644.

[34] In *State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 434 n.5, 477 N.W.2d 608 (1991), the court explained the importance of case law in interpreting the Public Records Law as follows:

> Prior to the enactment of the first general public records legislation by ch. 178, Laws of 1917, the public's right of access to government records was governed mainly by the common law. These general principles remain unchanged. Section 19.35(1)(a), Stats. states that "[s]ubstantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect."

[35] For discussions of the history of the Public Records Law in Wisconsin, see *International Union v. Gooding,* 251 Wis. 362, 366–67, 29 N.W.2d 730 (1947); *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 677–679, 137 N.W.2d 470, (1965); Sverre David

brief, case law served as the primary body of law in determining access to government materials. Although the 1983 version of the Public Records Law revised and renumbered the prior statute, courts continue to look to the earlier public records cases for guidance.[36]

¶ 89. The lesson learned from examining the prior statute and the case law is that documents with no connection to government functions are not records within the Public Records Law.

¶ 90. Before the adoption of the present Public Records Law effective January 1, 1983, the public's right to review government records was governed by Wis. Stat. §§ 19.21–19.25 (1979–80), which was substantially similar to the 1917 statute codified at §§ 18.01(1)-(2) (1917–18).

¶ 91. Section 19.21(2) (1979–80) provided in relevant part that "any person may . . . examine . . . any of the property or things mentioned in sub. (1)." Subsection (1) of § 19.21 provided in relevant part that each public officer "is the legal custodian of and shall keep and preserve all property and things . . . *required by law to be filed, deposited, or kept in his office, or which are*

Roang, Comment, *Toward a More Open and Accountable Government: A Call for Optimal Disclosure Under the Wisconsin Open Records Law,* 1994 Wis. L. Rev. 719, 721–722, 733–35; de la Mora, *supra* note 25, at 73–83.

[36] *See, e.g., Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 158–159, 469 N.W.2d 638 (1991) (applying *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470 (1965)); *State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 434–436, 477 N.W.2d 608 (1991) (analyzing and relying on numerous pre-1983 cases); *State ex rel. Blum v. Bd. of Educ.,* 209 Wis. 2d 377, 385–387, 565 N.W.2d 140 (Ct. App. 1997) (applying *Beckon v. Emery,* 36 Wis. 2d 510, 518, 153 N.W.2d 501 (1967)).

*in the lawful possession or control of himself or his deputies ...* " (emphasis added).

¶ 92. The phrase in Wis. Stat. § 19.21(1) (1979–80) highlighted above is the predecessor language to the current definition of records made available to public inspection in Wis. Stat. § 19.32(2). This definition in § 19.21(1) had been the subject of extensive discussion over the years among the attorney general, various public officials, and this court.

¶ 93. Prior to the adoption of the present law in 1983, the law was clear that papers having no relation to the function of a government office, including personal correspondence, were not open to public inspection.

¶ 94. The case law developed as follows: In 1922, the attorney general interpreted the highlighted language of Wis. Stat. § 18.01(1) (1921) as referring to only those documents an officer was under a legal obligation to preserve and "does not embrace every document or memorandum that may be found in a public office at any time."[37] A similar interpretation of the statutory language was adopted in *State ex rel. Spencer v. Freedy,* 198 Wis. 388, 223 N.W. 861 (1929).

¶ 95. This 1929 *Freedy* interpretation was reconsidered in *International Union v. Gooding,* 251 Wis. 362, 369, 29 N.W.2d 730 (1947).[38] In *International Union,* the court stated that the statutory language of

[37] 11 Wis. Op. Att'y. Gen. 7 (1922).

[38] *International Union v. Gooding,* 251 Wis. 362, 369, 29 N.W.2d 730 (1947), "overruled *sub silentio* the dictum appearing in the final paragraph of the opinion in *State ex rel. Spencer v. Freedy* [198 Wis. 388, 233 N.W. 861 (1929)] in which the conclusion was expressed that sec. 18.01, Stats., only allowed inspection of 'anything required by law to be filed, deposited, or kept in a public office.' " *Youmans,* 28 Wis. 2d at 679.

Wis. Stat. § 18.01(2) (1945) encompassed three categories of documents: (1) documents required by law to be filed, deposited, or kept in his office; (2) documents "in his possession as such officer"; and (3) documents "to the possession of which he is entitled as such officer."

¶ 96. In other words, the *International Union* court concluded that the "possession" language in Wis. Stat. § 18.01 (1945) encompassed more than simply what was legally required to be kept in an office, thus rejecting the earlier interpretation that possession referred only to those documents which a government entity was under a legal obligation to maintain. The *International Union* court, 251 Wis. at 371, stated: "It is rule independently of statute that public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office."

¶ 97. The *International Union* court further declared, however, that the "possession" language of the statute was limited to those items possessed in an official capacity: "It is also clear that the words of limitation give some power to officers to dispose of what this court has called purely fugitive papers having no relation to the function of the office."[39]

¶ 98. The court affirmed the *International Union* interpretation of "records" in *State ex rel. Youmans v.*

---

[39] *Int'l Union*, 251 Wis. at 370–71. *See also State ex rel. Dinneen v. Larson*, 231 Wis. 207, 214, 284 N.W. 21 (1939) (contrasting "mere fugitive papers, which were not required to be filed or kept, but were subject to disposition at the pleasure of the secretary" with those with "relevancy . . . to matters which may legitimately concern the [authority] in its official activities").

*Owens,* 28 Wis. 2d 672, 677–80, 137 N.W.2d 470 (1965), *modified on denial of reh'g,* 28 Wis. 2d 672, 139 N.W.2d 324 (1966).[40]

¶ 99. The attorney general also interpreted Wis. Stat. § 19.21(1)-(2) (1973) in 1974, regarding the types of correspondence in the governor's office that were open to the public. The attorney general advised the governor that the governor's official correspondence was subject to open record review "with the exception of truly personal correspondence or truly fugitive papers having no relation to the function of your office."[41]

¶ 100. The court again affirmed the *International Union* interpretation of Wis. Stat. § 19.21(1) in

---

[40] "[P]ublic records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate or customary method of discharging the duties of the office." *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 679, 137 N.W.2d 470 (1965) (quoting *Int'l Union,* 251 Wis. at 371).

[41] 63 Wis. Op. Att'y Gen. 400 (1974). This opinion was issued in response to an inquiry regarding a citizen request to examine correspondence addressed to the governor concerning a bill recently enacted by the legislature. The attorney general was interpreting the definition of "record" in Wis. Stat. § 19.21(2) (1973) along with the definition of "public record" in § 16.80(2)(a) applicable, *inter alia,* to records retention. Wis. Stat. § 16.80(2) (1973) provided as follows:

> (a) 'Public records' means all books, papers, maps, photographs, films, recordings, or other documentary materials or any copy thereof, regardless of physical form or characteristics, made, or received by any agency of the state or its officers or employes [sic] *in connection with the transaction of public business and retained by that agency or its successor as evidence of its activities or functions because of the information contained therein;* except the records and correspondence of any member of the state legislature (emphasis added).

616

*Hathaway v. Joint School District No. 1,* 116 Wis. 2d 388, 393, 342 N.W.2d 682 (1984). The court reiterated that public records included "not only those documents specifically required to be filed by the custodian of records, but all written papers made by an officer within his authority." *Hathaway,* 116 Wis. 2d at 393. Public records include those "made by an officer within his authority."[42]

■■■

¶ 101. The statutory history, the case law and the attorney general opinions demonstrate that whether a document is a public record depends on the nature and purpose of the document's contents and that the existence of a document within a public office does not in and of itself make that document a public record. As the court recognized in *Panknin,* not everything a government official or employee creates is a public record.[43]

¶ 102. In sum, the statutory history evidences that for most of a century Wisconsin's public records law has recognized that "fugitive papers" and personal communications with no connection to government functions are not records under the law. The case law has also emphasized that the statute, although slightly

[42] The *Hathaway* case addressed a request for lists of student names and addresses. It was never contested that these were prepared for official school purposes, and it was "conceded . . . that the list of names and addresses of parents of children in the Green Bay School District constitutes a public record" and was therefore subject to inspection at face value. *Hathaway v. Joint Sch. Dist. No. 1,* 116 Wis. 2d 388, 392, 342 N.W.2d 682, 684 (1984). The question addressed was whether another statutory provision, Wis. Stat. § 118.125, governing "Pupil Records," made the list confidential as an express exception to the Open Records Law.

[43] *State v. Panknin,* 217 Wis. 2d 200, 209–10, 579 N.W.2d 52 (Ct. App. 1998).

differently over the decades, has continued to recognize and incorporate the existing common-law limitations on access to public records.

¶ 103. The legislature is presumed to be aware of existing laws[44] and the courts' interpretations of those laws[45] when it enacts a statute. The 1983 statute defining "record" uses language similar to that used in the predecessor statute and does not topple the long-established exclusion of purely personal (that is "fugitive") documents from the meaning of the word "record." Indeed, the 1983 statute explicitly preserves substantive common-law principles construing the right to inspect, copy, or receive copies of records. Wis. Stat. § 19.35(1)(a).

¶ 104. The lesson learned from examining the prior statutes and the case law is that documents with purely personal content and with no connection to a government function are not records within the Public Records Law. This definition of "records" comports with the interpretations and applications of the Public Records Law by the executive branch and the explicit legislative purposes of the Public Records Law, which we now discuss.

D

¶ 105. Statutory interpretation may also be informed by the interpretations and applications of a

---

[44] *Heritage Farms, Inc. v. Markel Ins.*, 2009 WI 27, ¶ 40, 316 Wis. 2d 47, 762 N.W.2d 652.

[45] *State v. Rosenburg*, 208 Wis. 2d 191, 198, 560 N.W.2d 266 (1997); *DOR v. Johnson Welding & Mfg. Co., Inc.*, 2000 WI App 179, ¶ 16, 238 Wis. 2d 243, 617 N.W.2d 193.

statute by the executive arms of government. The Public Records Law has long been administered to exclude from the meaning of "record" those documents with purely personal content, sometimes referred to as fugitive papers. To be a record, according to the frequently applied administrative interpretation of the Public Records Law, the content of the document must have a connection to a government function.

██ ██

¶ 106. One important interpretation of the word "record" in Wis. Stat. § 19.32(2) comes from the Office of the Attorney General. Although we are not bound by an attorney general's opinion, a well-reasoned opinion is of persuasive value when a court later addresses the meaning of the same statute.[46] The opinions and writings of the attorney general have special significance in interpreting the Public Records Law inasmuch as the legislature has specifically authorized the attorney general to advise "any person" as to the applicability of the Law. Wis. Stat. § 19.39.[47]

---

[46] *State v. Ludwig,* 31 Wis. 2d 690, 698, 143 N.W.2d 548 (1966); *Town of Vernon v. Waukesha County,* 102 Wis. 2d 686, 692, 307 N.W.2d 227 (1981); *Village of DeForest v. Dane County,* 211 Wis. 2d 804, 812, 565 N.W.2d 296 (Ct. App. 1997) (citing *Norton v. Town of Sevastopol,* 108 Wis. 2d 595, 599, 323 N.W.2d 148 (Ct. App. 1982)).

[47] *See State v. Beaver Dam Area Dev. Corp.,* 2008 WI 90, ¶ 37, 312 Wis. 2d 84, 752 N.W.2d 295 ("the interpretation advanced by the attorney general is of particular importance" because "the legislature has expressly charged the state attorney general with interpreting the open meetings and public record statutes"); *see also State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 437, 477 N.W.2d 608, 611 (1991) (relying on the attorney general's opinion for "additional common law support").

¶ 107. In 1983, shortly after the present statutory definition of "record" became effective, the attorney general advised the Department of Health and Human Services about releasing copies of documents received from other agencies purely for informational purposes and concerning matters not affecting the Department's functions. The attorney general advised the Department that documents whose content did not demonstrate "sufficient connection with the function of" the office did not qualify as public records and "therefore, would not have to be preserved or disclosed." 72 Wis. Op. Att'y Gen. 99 (1983).

¶ 108. In issuing this opinion, the attorney general examined Wis. Stat. § 19.32(2) in connection with two statutes: Wis. Stat. § 16.61 and § 19.21. Wisconsin Stat. § 16.61 governs, *inter alia,* record retention practices. Section 16.61(b) defines "public records" as "all books, papers . . . *made, or received by any state agency or its officers or employees in connection with the transaction of public business* . . . ." (emphasis added). Wisconsin Stats. § 19.21 requires each and every officer of state and local government, including the school district, to keep and preserve property.

¶ 109. The attorney general opined that these three statutes, read together, demonstrate that a legal custodian has a duty under the Public Records Law to preserve those records "that have some relation to the function of his or her office." Accordingly, the attorney general concluded that a custodian would not have to

Earlier drafts of the law contained provisions for an adjudicative body, the Open Records Board, which would review denials of requests for access to records. The provision for the attorney general to give advisory opinions replaced this provision for an independent adjudicatory body. *See* de la Mora, *supra* note 25, at 83–84; *compare* 1979 S.B. 482 *with* Senate Substitute Amendment 1 to 1981 S.B. 250 *and* 1981 Wis. Act 335.

preserve or disclose copies of documents received from other agencies purely for information purposes because they "[do] not have a sufficient connection with the function of the office to qualify as public records . . . ." 72 Wis. Op. Att'y Gen. 99 (1983).

¶ 110. The attorney general has continued to adhere to this interpretation, recognizing that "not everything a public official or employee creates is a public record,"[48] and that records are those documents "created or kept in connection with official purpose or function of the agency."[49] The attorney general consistently advises that "content, not medium or format, determines whether a document is a 'record' or not."[50]

¶ 111. In less formal writings, such as a 2001 correspondence with a journalist from the *Wisconsin State Journal,* the attorney general advised that "records of a purely personal nature are exempt for the definition of 'record' in Section 19.32(2)," and that "personal documents are not covered by the public records law."[51]

¶ 112. In a 2005 correspondence, the attorney general informed the president of the Waukesha Taxpayers League that "if the emails were about some matter that was purely personal, the emails would not be a public record."[52]

---

[48] Wis. Dep't of Justice, *Wis. Pub. Records Law: Wis. Stat. §§ 19.31–19.39, Compliance Outline* (Aug. 2009) (hereinafter *DOJ Compliance Outline*) (quoting *In re John Doe Proceeding,* 2004 WI 65, ¶ 45, 272 Wis. 2d 208, 680 N.W.2d 792), *available at* http://www.doj.state.wi.us/dls/OMPR/2009OMCG-PRO/2009_Pub_Rec_Outline.pdf (last visited July 9, 2010).

[49] *Id.; State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 679, 137 N.W.2d 470, 473 (1965).

[50] *DOJ Compliance Outline* at 3.

[51] *See* Plaintiffs-Appellants' Brief and Appendix, A-Ap. 172.

[52] *See id.,* A-Ap. 173.

¶ 113. In a 2006 correspondence with the legal counsel for the State Elections Board, the attorney general's office advised that "[t]he fact that . . . electronic communications are transmitted and stored on private email accounts . . . is immaterial, because Wisconsin law has long recognized that the substance of the record, not its physical location or custody, determines whether the document is subject to the public records statute."[53]

¶ 114. In a 2007 internal memorandum, the attorney general specifically applied this rationale to the issue of employees' personal e-mails, as presented in this case. The memorandum concluded that "purely personal emails of public employees are not public records," again emphasizing that "*content,* not medium or format, determines whether a document is a 'record or not.' "[54]

¶ 115. The attorney general's office is not the only executive entity advising that the contents of personal e-mails are not records under the Public Records Law. The offices of the city attorneys of Milwaukee and Madison have also advised agencies within their respective cities on matters relating to compliance with the Public Records Law and offer formal and informal opinions interpreting the Public Records Law.

¶ 116. These city attorneys have consistently advised that personal communications are not records under Wis. Stat. § 19.32(2), and filed a nonparty brief in this case, advising this court that affirmance of the order of the circuit court might apply "to all recordable communications made on government equipment or resources, including all pieces of paper, instant messag-

---

[53] *See id.*

[54] *See id.* at A-Ap. 172 (emphasis in original).

ing, text messaging, and VOIP (voice over internet protocol) used incidentally by employees to communicate on personal matters." They urge us to clarify the law by ruling that the contents of e-mails including only personal messages are not records subject to disclosure as records under the Public Records Law.

¶ 117. The Milwaukee and Madison city attorneys also alert the court that federal and state courts have indicated there may be privacy concerns relating to disclosure of employees' personal e-mail[55] and that disclosure of some personal messages under some circumstances may violate the federal Stored Communication Act, 18 U.S.C. § 2702(a)(1). They urge this court not to place records custodians in what they consider an impossible position where, if the contents of personal e-mails are defined as records, custodians would risk on the one hand violation of the Public Records Law (for failure to disclose) or on the other hand violation of privacy rights or the federal Stored Communication Act (for disclosing protected personal information).[56]

---

[55] *Denver Publ'g Co. v. Bd of County Comm'rs,* 121 P.3d 190 (Colo. 2005) (acknowledging that a constitutional right to privacy may bar access to public records otherwise accessible under the public records law). *Compare Muick v. Glenayre Elecs.,* 280 F.3d 741, 743 (7th Cir. 2002) (employees of private employer have no reasonable expectation of privacy in information stored on employer laptops because of employer's announced policy that it could inspect the laptops it furnished for employee use).

[56] Similarly, the Wisconsin Department of Administration (DOA) has produced "E-mail Records Management Training" materials relating to records retention. The DOA affirms that "e-mail messages *about state business* are public records." (emphasis added). "[I]t is not sufficient to treat e-mail with a broad brush. . . . The medium is irrelevant. E-mail messages should be evaluated for content and function to determine whether the

¶ 118. Applying these administrative interpretations to the instant case, we would conclude that the Teachers' personal e-mails are neither for the informational purposes of the School District, nor are they communications between one official agency and another. They have even less connection to any government function than the informational materials received from other government agencies that the attorney general advises are not public records. Rather, these are personal messages between employees and their friends and families.

¶ 119. The content of the Teachers' e-mails at issue has no connection to a government function, and executive branch interpretations of the Public Records Law would characterize the contents of the Teachers' personal e-mails as not records under Wis. Stat. § 19.32(2).

message is a record or a non-record . . . ." *See* Plaintiffs-Appellants' Brief and Appendix at A-Ap. 177. In its training materials for public records e-mail management, the Department of Administration identifies "Personal e-mail . . . such as 'let's do lunch' or 'can I catch a ride home' or family e-mail communications" as a specific example of "Non-Record E-mail." *See* Amy K. Moran & Nancy Kunde, *Public Records in E-mail and Winning Strategies for Managing Them: Presentation to Wis. Ass'n of Academic Librarians, Apr. 23, 2009,* available at http://www.doa.state.wi.us/docview.asp?docid=7617&locid=0 (last visited July 9, 2010).

The School District agrees that it was not required to retain the Teachers' personal e-mails at issue under Wis. Stat. § 16.61.

We do not interpret Wis. Stat. § 16.61 or rely on it. It is interesting to note that arguably the only reason the record requester might have access to the Teachers' personal e-mails in the present case is that the School District did not destroy the e-mails.

¶ 120. Insight into the meaning of the word "record" in Wis. Stat. § 19.32(2) may also be provided by the legislative history of § 19.32(2).

¶ 121. The definition of "record" in Wis. Stat. § 19.32(2) has not been amended since the legislature adopted it in 1983. As noted, that same year, the attorney general interpreted "record" in § 19.32(2) to exclude documents whose content did not demonstrate "sufficient connection with the function of" the government office. 72 Wis. Op. Att'y. Gen. 99 (1983).

¶ 122. Although Wis. Stat. § 19.32(2) has not been amended, the legislature has amended various provisions in the Public Records Law multiple times since its original enactment. The legislature has thus passed up several opportunities to change the definition of "record" after the attorney general's opinions.

¶ 123. In 2002, the Joint Legislative Council established a Special Committee on Review of the Open Records Law, which was specifically directed to "recommend changes in the law to accommodate electronic communications . . . ." The Committee issued a report to the legislature on March 25, 2003, without recommending any change to the definition of record or any change to accommodate electronic communications.[57]

¶ 124. Legislative failure to act is ordinarily weak evidence of legislative intention to acquiesce in or countenance a judicial or executive branch interpreta-

---

[57] *See* Wisconsin Legislative Council, *Special Committee on Review of the Open Records Law: Report to the Legislature* 5 (Mar. 25, 2003).

tion.[58] Several alternative reasons may explain the inaction. Under proper circumstances, however, inaction by the legislature may be evidence of legislative intent.[59] In the instant case, the legislature's inaction appears probative of legislative intent to accede to the attorney general's interpretation of the word "record."

¶ 125. This legislative inaction coupled with rules of statutory interpretation shows that the legislature has both contemplated the specific problem at hand and enacted numerous other amendments to the public record law. In these circumstances, legislative inaction points to acquiescence in the attorney general's long-standing opinion that the meaning of "record" in § 19.32(2) excludes documents whose content demonstrates no connection with a government function.

■

¶ 126. A well-reasoned attorney general's opinion interpreting a statute is, according to the court's rules of statutory interpretation, of persuasive value.[60] Furthermore, a statutory interpretation by the attorney

---

[58] *See Green Bay Packaging, Inc. v. DILHR,* 72 Wis. 2d 26, 36, 240 N.W.2d 422, 428 (1976) ("[L]egislative inaction . . . has been called 'a week [sic] reed upon which to lean' and a 'poor beacon' to follow in construing a statute" (quoted source omitted).).

[59] *See Mallo v. DOR,* 2002 WI 70, ¶ 31 253 Wis. 2d 391, 645 N.W.2d 853, 866 (under proper circumstances, inaction by the legislature may be evidence of legislative intent) (citing *Estate of Cameron,* 249 Wis. 531, 542, 25 N.W.2d 504 (1946)).

For a discussion of reliance on legislative inaction to assist in statutory interpretation, see *Wenke v. Gehl Co.,* 2004 WI 103, ¶¶ 32–37, 274 Wis. 2d 220, 682 N.W.2d 405.

[60] *State v. Ludwig,* 31 Wis. 2d 690, 698, 143 N.W.2d 548 (1966); *Town of Vernon v. Waukesha County,* 102 Wis. 2d 686, 692, 307 N.W.2d 227 (1981); *Village of DeForest v. Dane County,*

general "is accorded even greater weight, and is regarded as presumptively correct, when the legislature later amends the statute but makes no changes in response to the attorney general's opinion."[61]

¶ 127. In sum, the legislative history supports interpreting Wis. Stat. § 19.32(2) to require that the content of a document have a connection to a government function in order to constitute a "record" under Wis. Stat. § 19.32(2).

F

¶ 128. This court has looked to other states for their interpretations of their open records laws to assist in the interpretation of the Wisconsin Public Records Law.[62]

¶ 129. The School District cites no cases from any jurisdiction taking the position that the contents of government employees' personal e-mails should be disclosed as public records.

¶ 130. In contrast, several state courts have concluded that the contents of government employees'

---

211 Wis. 2d 804, 812, 565 N.W.2d 296 (Ct. App. 1997) (citing *Norton v. Town of Sevastopol,* 108 Wis. 2d 595, 599, 323 N.W.2d 148 (Ct. App. 1982)).

[61] *Staples for Staples v. Glienke,* 142 Wis. 2d 19, 28, 416 N.W.2d 920 (Ct. App. 1987); *see also Village of DeForest v. County of Dane,* 211 Wis. 2d 804, 812–813, 565 N.W.2d 296 (Ct. App. 1997).

[62] *See, e.g., State v. Beaver Dam Area Dev. Corp.,* 2008 WI 90, ¶¶ 45 & n.10, 50 & n.12, 312 Wis. 2d 84, 102, 104, 752 N.W.2d 295 ("although the determination . . . depends on the respective statutory language [of open meetings and public records laws] of each state, the interpretations rendered by courts in other jurisdictions are instructive" in construction and application of public records law); *State v. Panknin,* 217 Wis. 2d 200, 210–213, 579 N.W.2d 52 (1998) (citing Ohio law).

personal e-mails under their respective open records acts are not public records. In these states, a connection to government business is needed to classify the document as a public record.[63]

[63] *See, e.g., Griffis v. Pinal County,* 156 P.3d 418, 421 (Ariz. 2007) ("the nature and purpose of the document determine its status;" e-mails "relate[d] solely to personal matters" lack "the requisite substantial nexus with government activities"); *Pulaski County v. Ark. Democrat-Gazette, Inc.,* 260 S.W.3d 718, 725 (Ark. 2007) (case-by-case examination of e-mails required "to discern whether [e-mails] relate solely to personal matters or whether they reflect a substantial nexus with [government] activities"); *Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190, 195 (Colo. 2005) (statute defines records to include only records that address the performance of public functions or the receipt or expenditure of public funds); *State v. City of Clearwater,* 863 So. 2d 149, 155 (Fla. 2003) (personal e-mails of government employees are not public records under statute or subject to inspection under state constitution because they lack a "connection with the transaction of official business"); *Cowles Publ'g Co. v. Kootenai County Bd.,* 159 P.3d 896, 901 (Idaho 2007) ("it is not simply the fact that the emails were sent and received while the employees were at work. . . that makes them a public record. Rather, it is their relation to legitimate public interest that makes them a public record"); *Howell Education Ass'n v. Howell Bd. of Educ.,* ___ N.W.2d ___, 2010 WL 290515 (Mich. Ct. App. Jan. 26, 2010) (individual teacher's personal e-mails are not "rendered public records solely because they were captured in the email system's digital memory"); *State ex rel. Wilson-Simmons v. Lake County Sheriff's Dep't,* 693 N.E.2d 789, 793 (Ohio 1998) (only e-mails that "serve to document the organization, functions, policies, decisions, procedures, operations, or other activities" of the government office are public records); *Brennan v. Giles County Bd. of Ed.,* No. M2004–00998–COA–R3–CV, 2005 WL 1996625 (Tenn. Ct. App. 2005) (digital records, including e-mails, held to fall outside statutory definition of public records unless "made or received . . . in connection with the transaction of official busi-

¶ 131. We agree with the School District that the open record statutes differ from state to state and that the definition of "record" in other state statutes is not similar to the language of Wis. Stat. § 19.32(2). Nevertheless, it is of persuasive value that a substantial number of states have found that personal e-mails of public employees should not be treated as available public records. Although the underlying laws vary somewhat, the strong consensus is that personal e-mails do not become public records merely because they were sent during a public employee's workday or using government computers and e-mail accounts.

G

¶ 132. Finally, we examine the consequences for the custodian of records of interpreting the definition of

ness"); *Tiberino v. Spokane County*, 13 P.3d 1104, 1108 (Wash. Ct. App. 2000) (personal e-mails were "public records" subject to disclosure where excessive personal e-mails were a reason for discharge and office printed and compiled e-mails in preparation for related litigation; however e-mails were exempt from disclosure because while the fact of excessive use is of legitimate public concern, the actual content of personal e-mails is not); *Associated Press v. Canterbury*, 688 S.E.2d 317 (W. Va. 2009) (interpreting West Virginia Freedom of Information Act, in line with "the majority position" of other states, holding that "personal e-mail communication by a public official or public employee, which does not relate to the conduct of the public's business" does not constitute public records and concluding that the contents of e-mails between Justice Maynard of the West Virginia Supreme Court of Appeals and Donald Blankenship of Massey Energy Company did not render them public records, in spite of "great public interest in the relationship between Justice Maynard and Mr. Blankenship" as well as "enormous statewide and national public interest in our judicial recusal procedures").

"record" in Wis. Stat. § 19.32(2) to exclude the content of personal e-mails. Statutes are to be interpreted reasonably. The legislature would not have intended the interpretation of the word "record" in Wis. Stat. § 19.32(2) to impose an unreasonable burden on custodians of records. Interpreting "record" to exclude the content of personal e-mails does not impose an unreasonable administrative burden on custodians of records.

¶ 133. No matter how the court rules in the present case, the custodian must examine and evaluate all e-mails before release to determine whether the content of the e-mail falls within an exception articulated in Wis. Stat. § 19.35(am)1.-3., a common-law exception to records disclosure, or another statutory protection. The custodian may need to redact protected or personal information within a document otherwise subject to release, and in any event must evaluate the content of the e-mails to perform the balancing test, even if the e-mails were characterized as records under § 19.32(2).

¶ 134. The School District acknowledges that even if the Teachers' personal e-mails at issue were records available to a records requester, the School District (and potentially courts, on judicial review) must examine the contents of the e-mails to determine whether to release them. Here, the School District has already acknowledged, and the circuit court order has required, that confidential information including pupil records, banking and medical information, and other personally identifiable information must be redacted from any released e-mails. Under the present statutes, the custodian must examine the contents of each e-mail to decide what material is publicly accessible while withholding protected or exempt information. Wis. Stat. § 19.36(6).

¶ 135. It is thus no more laborious a task for the record custodian to sort the contents of e-mails into personal and governmental than is already required to protect sensitive and exempted information and to perform the required balancing test.

¶ 136. As a result of today's decision, in addition to the other decisions the record custodian makes, he or she will have to determine whether the content of an e-mail is solely personal or has a connection to a governmental function. We recognize that it may not always be easy for the record custodian to separate the content of personal e-mails from the content of e-mails relating to school business.

¶ 137. If the content of the e-mail is solely personal, it is not a record under the Public Records Law and the e-mail cannot be released. If the content of the e-mail is personal in part and has a connection with the government function in part, then the custodian may need to redact the personal content and release the portion connected to the government function. The record custodian's inquiry focuses on the content of the e-mail and asks whether that content is connected to a government function. This is more of a pragmatic inquiry than an elaborate legal analysis. The e-mails at issue in this case are conceded to be entirely personal, with no connection to a governmental function.

¶ 138. Our decision today appears to add little to the administrative demands already created by Public Records Law. Indeed, in many cases it may be simpler for a record custodian to exclude wholly the content of personal e-mails, rather than to classify them as "records" under Wis. Stat. § 19.32(2) and then need to further evaluate the contents of each to determine whether portions are protected from release. These

practical considerations therefore do not persuade us to deviate from the conclusion that the determination of whether the Teachers' personal e-mails are records is based on whether their content has a connection to a government function.

\* \* \* \*

¶ 139. In keeping with the court's past interpretations of the Public Records Law, we have explored various avenues to interpret the word "record" as defined in Wis. Stat. § 19.32(2), including the text of Wis. Stat. § 19.32(2); the text of Wis. Stat. § 19.31, the legislature's explicit statement of its intent, the statutory purpose and policy, and the construction of the Public Records Law; the statutory history and case law interpretations of prior versions of the statute; the executive branch interpretations of the definition of "records" (especially the opinions of the attorney general); the legislative failure to amend § 19.32(2); other states' interpretations of their open records laws; and the consequences for custodians of record of interpreting Wis. Stat. § 19.32(2) to exclude the content of the Teachers' personal e-mails.

¶ 140. All these avenues of interpretation lead to one conclusion: In determining whether a document is a record under Wis. Stat. § 19.32(2), the focus is on the content of the document. To be a record under § 19.32(2), the content of the document must have a connection to a government function.

¶ 141. In the instant case, the contents of the Teachers' personal e-mails have no connection to a government function and therefore are not records under Wis. Stat. § 19.32(2). The contents of personal e-mails could, however, be records under the Public Records Law under certain circumstances. For ex-

ample, if the e-mails were used as evidence in a disciplinary investigation or to investigate the misuse of government resources, the personal e-mails would be records under Wis. Stat. § 19.32(2). A connection would exist between the contents of the e-mails and a government function, namely the investigations.

¶ 142. The contents of the personal e-mails that the Teachers created and maintained on government-owned computers pursuant to the government employer's permission for occasional personal use of the government e-mail account and computer are not "records" under Wis. Stat. § 19.32(2). The personal contents of these e-mails are not subject to release to a record requester merely because they are sent or received using the government employers' e-mail systems and then stored and maintained on those systems. Because we conclude that the contents of the Teachers' personal e-mails are not "records" under the Public Records Law, we need not reach the question of balancing the public interest favoring disclosure with any other public interest.

¶ 143. For the reasons set forth, we reverse the order of the circuit court and remand the cause to the circuit court to enjoin the School District from releasing the contents of the Teachers personal e-mails.

*By the Court.*—The order of the circuit court is reversed and the cause remanded.

¶ 144. ANN WALSH BRADLEY, J. (*concurring*). During the last several decades, technological advancements have revolutionized document storage and electronic communication. Prior to these advancements, an employee's personal communications, whether by note, letter, or telephone call, would not have been kept by an authority and therefore would not have been subject to disclosure under the public records law.

![black bar]

¶ 145. As a result of changing technology, however, many personal communications that are unrelated to the affairs of government and the official acts of officers and employees may now be "kept by an authority" because they are stored on a government server. This fact presents new challenges to record custodians who are required to determine whether particular documents are records subject to disclosure.[1]

¶ 146. This case presents an important issue that has far- reaching effects. It involves what I call a "bread and butter" issue of Wisconsin law. Record custodians around the state in public entities large and small are called upon day in and day out to respond to public records requests.

¶ 147. Although the various briefs submitted in this case take different positions as to the analysis and the answer, there emerges a unified theme—what is needed is clear direction to record custodians for this important everyday task.

¶ 148. Much like the various briefs submitted, the opinions authored in this case also offer different approaches. Lest there be any doubt, however, a clear rule has emerged: a custodian should not release the content of an email that is purely personal and evinces no violation of law or policy.[2]

---

[1] The public records law was recently amended by 2003 Wisconsin Act 47. The prefatory note to the bill explains that the Joint Legislative Council's Special Committee on Review of the Open Records Law was directed to "recommend changes in the open records law to accommodate electronic communications[.]" Nevertheless, the 2003 amendments did not address technological advancements in document storage and electronic communication.

[2] Chief Justice Abrahamson, Justice Crooks, Justice Prosser, Justice Gableman, and I all reach this result.

I

¶ 149. At issue in this case is the content of emails that the School District and the Teachers agree is personal and evinces no violation of law or policy. I begin by determining whether the content of such an email is a record under the public records law.

¶ 150. Wis. Stat. § 19.32(2) defines "record" as follows:

> "Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. "Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

¶ 151. The Teachers' emails are materials, kept by an authority, on which written or electromagnetic information is recorded and preserved. The emails are not "drafts, notes, preliminary computations" or "like materials prepared for the originator's personal use." Further, they are not "materials which are purely the personal property of the custodian."

635

¶ 152. I do not consider the declaration of policy found in Wis. Stat. § 19.31 when evaluating the definition of record in Wis. Stat. § 19.32. Nothing in the definition distinguishes between content that is personal and content that is work-related when that content is prepared by an originator (here, the Teachers) and in the possession of the custodian (here, the School District). Given this definition and unlike the lead opinion, I conclude that the Teachers' personal emails are records.

II

¶ 153. Although I agree with the dissent and with Justice Gableman's concurrence that the Teachers' personal emails are records, I do not join them. I determine that the dissent fails to acknowledge the important policy reasons supporting nondisclosure of the content of personal emails. I do not join Justice Gableman's concurrence because it embarks upon addressing a statute that is not implicated in this case. Further, in the wake of the discussion, it leaves confusion rather than clarity in the law because it misconstrues the lead opinion.

¶ 154. The dissent concludes that there is a strong public interest in disclosure of the content of all of the Teachers' emails, even those that are personal and evince no violation of law or policy. Dissent, ¶ 224. "Given the significant role that teachers play in our society," the dissent explains, "the public has a very strong interest in all of their activities in the workplace." Dissent, ¶ 209.

¶ 155. The trouble with this analysis, as I see it, is that the public interest in monitoring the content of the Teachers' personal emails cannot be as absolute as the

636

dissent contends. The dissent acknowledges that disclosure would not extend to personal email accounts, such as email services offered by gmail or Yahoo, which may have been accessed by the teachers on their work computers during the school day. Dissent, ¶ 188 n.1. Under the dissent's interpretation of the public records law, it is the accident of the emails' location on the District's server—rather than anything intrinsic about the content of these emails—that would make them subject to release.

¶ 156. If the dissent is right, then a government employee could subvert the purpose of the public records law in seconds and with several strokes on a keyboard simply by logging onto a free personal email account. I conclude that the policy underlying the public records law is not so ephemeral and its mandates are not so easily circumvented.

¶ 157. Likewise, I am concerned that Justice Gableman's concurrence adds confusion rather than clarity to the law. This case was initiated by record subjects—not record requestors. Wis. Stat. § 19.356(1), created by 2003 Wis. Act 47, provides record subjects with limited rights of judicial review that differ from the rights of judicial review that apply when a requestor brings an action under Wis. Stat. § 19.37.

¶ 158. Five teachers of the Wisconsin Rapids School District who were the subjects of a records request commenced this action. The records requestor, Don Bubolz, did not initiate this or any other action. Nevertheless, the concurrence reaches out and addresses the statute governing actions by record requestors, Wis. Stat. § 19.37, a statute not before the court. It discusses cases decided under that statute and offers

advice to Bubolz on how to proceed as a requestor of public records under that statute. Justice Gableman's concurrence, ¶¶ 184–186.

¶ 159. I am hesitant to respond to the concurrence's discussion of Wis. Stat. § 19.37 because, as explained above, it is extraneous to this case. Nevertheless, I do so briefly because I fear that in misconstruing the lead opinion, the concurrence's discussion may leave confusion in the law.

¶ 160. The concurrence incorrectly concludes that the approach of the lead opinion would give record custodians under Wis. Stat. § 19.37 the final say on whether withheld documents should be released. In essence it warns that record requestors would simply be out of luck and could not challenge the withholding of documents under the lead opinion's approach because they would not be records. Justice Gableman's concurrence, ¶ 186 n.12.

¶ 161. Regardless of whether the approach of the lead opinion is taken (the content of a purely personal email is not a record) or the approach of the concurrences is taken (the content of a purely personal email is a record), it is really the same question and yields the same result. The custodian must either "fill the request" or notify the requestor of the denial and "the reasons therefor." Wis. Stat. § 19.35(4)(a).

¶ 162. Further, under either approach, if the decision of the custodian is to withhold requested documents, that decision can be challenged under Wis. Stat. § 19.37 and is subject to review by the circuit court. If the custodian determines that the requested document is not a "record," that determination is subject to judicial review. *See Journal/Sentinel, Inc. v. Sch. Bd. of Sch. Dist. of Shorewood,* 186 Wis. 2d 443, 450 n.3, 521 N.W.2d 165 (Ct. App. 1994) (reviewing the custodian's

determination that a "Memorandum of Understanding" was a "draft" and therefore not a "record"); *Stone v. Bd. of Regents,* 2007 WI App 223, 305 Wis. 2d 679, 741 N.W.2d 774 (reviewing whether a copy of a record is a "record"). Likewise, if the custodian determines that the requested document is a record but its purely personal content will not be released under the balancing test, that determination is also subject to review. In either event, the record custodian does not have the final say.

### III

¶ 163. Before releasing a record, the record custodian must apply a balancing test, which weighs the public interest in disclosure against the public interest in nondisclosure. This case requires the court to provide direction to custodians on how to apply the balancing test to the content of an email that is purely personal and evinces no violation of law or policy.

¶ 164. The Teachers have stated that they have no objection to the disclosure of statistical information about their email use or to the disclosure of their personal emails with the content fully redacted. *See* lead op., ¶ 28. This information would allow the requestor to determine how often the Teachers sent and received personal emails from their work accounts. It is the disclosure of the content of personal emails that is the basis of the Teachers' objection.

¶ 165. The public policy underlying the public records law is set forth in the statute and informs the application of the balancing test. "[I]t is declared to be the public policy of the state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." Wis. Stat.

§ 19.31. "To that end," the statute provides that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *Id.*

¶ 166. When a record provides "information regarding the affairs of government and the official acts of [] officers and employees," including information that would permit the public to evaluate the use or misuse of public resources, access to that record is presumed. Denial of public access to such records is "generally contrary to the public interest."

¶ 167. Disclosure of the contents of personal emails, however, does not keep the electorate informed about "official acts" and "the affairs of government" when the contents of the emails evince no violation of law or policy. Disclosure of the contents of such emails would not further the public policy declaration found in Wis. Stat. § 19.31.

¶ 168. I agree with Justice Gableman that there is little public interest in disclosure of the content of emails when that content is purely personal and evinces no violation of law or policy. *See* Justice Gableman's concurrence, ¶ 182. I also agree with Justice Gableman that there is a public interest served by nondisclosure. Unlike Justice Gableman, however, I conclude that the balance always weighs in favor of nondisclosure.

¶ 169. The public has an interest in hiring and retaining skilled employees. As the lead opinion explains, "[s]tripping a public employee of his or her privacy in the contents of personal emails simply because he or she works for the government might . . .

negatively impact employee morale, and undermine recruiting and retention of government employees." Lead op., ¶ 85.

¶ 170. The public also has an interest in government employee productivity. Like private employees, public employees often have to address personal or family issues that arise while they are at work, and email is an effective means by which employees can quickly address these issues. *See* lead op., ¶¶ 84–85. If public employees believe that their personal email communications will be subject to disclosure upon a records request, public employees will likely use other less efficient means of communication, reducing their productivity.

¶ 171. In the years since the advent of email and the resulting changes in the way that we communicate, many jurisdictions have been asked to address whether personal emails should be disclosed in response to a records request. Every single one of the jurisdictions has concluded that the policies underlying public records laws do not support the disclosure of purely personal emails that evince no violation of law or policy. *See* lead op., ¶ 130 n.63 (collecting cases).

¶ 172. For the reasons set forth above, I conclude that whenever the content of an email is purely personal and evinces no violation of law or policy, the public interest in nondisclosure will always outweigh the public interest in disclosure. Therefore, once the custodian determines that certain emails are purely personal and evince no violation of law or policy, the custodian does not undertake a balancing of each request. Like the lead opinion and Justice Gableman's concurrence, I determine that the content of such emails should not be released. Accordingly, I respectfully concur.

¶ 173. MICHAEL J. GABLEMAN, J. (*concurring*). I concur in the result reached by the lead opinion, but I cannot agree with its reasoning. The lead opinion concludes that the content of the teachers' personal e-mails have no connection to a government function and therefore are not "records" under Wis. Stat. § 19.32(2) (2007–08).[1] Lead op., ¶ 142. The dissent concludes that the e-mails at issue here are records, that the public interest in disclosure outweighs the public interest in nondisclosure, and therefore, that the e-mails should be released. *See* dissent, ¶ 230. I write separately because I agree with the dissent that an e-mail sent by a government employee from a government computer using a government e-mail account and stored on a government server is a "record" as defined in § 19.32(2).[2] However, when a record is of a purely personal nature and does not evince a violation of any law or employer policy, I conclude that the public interest in nondisclosure always outweighs the public interest in disclosure.[3] Thus, I conclude that the teach-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] A majority of this court (composed of Justice Bradley, Justice Roggensack, Justice Ziegler, and me) agrees that an e-mail sent by a government employee from a government computer using a government e-mail account and stored on a government server is a "record" as defined in Wis. Stat. § 19.32(2).

[3] Justice Bradley adopts my analysis and likewise concludes that the public interest in nondisclosure outweighs the public interest in disclosure when the content of an e-mail is purely personal and evinces no violation of law or policy. Justice Bradley's concurrence, ¶ 172.

Justice Bradley also concludes that, "once the custodian determines that certain e[-]mails are purely personal and evince

642

ers' personal e-mails not reflecting a violation of law or policy should not be released.[4] I write further to clarify the procedure that governs review of these kinds of record requests under our existing case law.

I

¶ 174. Requesters seeking documents under Wisconsin's open records law[5] are entitled only to materials that meet the statutory definition of a "record" in Wis. Stat. § 19.32(2).[6] *See* Wis. Stat. § 19.35(1)(a) ("Except as otherwise provided by law, any

no violation of law or policy, the custodian does not undertake a balancing of each request." *Id.* It is not clear what this statement means. Under both her and my approach, the custodian's determination that an e-mail is purely personal and evinces no violation of law or policy is the product of a balancing of each e-mail. To then conclude that no balancing is required does not make sense.

[4] A majority of this court (composed of the Chief Justice, Justice Bradley, Justice Crooks, Justice Prosser, and me) also agrees that insofar as the teachers' e-mails are purely personal in nature and do not evince a violation of law or policy, they should not be released by the district.

[5] Wis. Stat. §§ 19.31–19.39.

[6] Wisconsin Stat. § 19.32(2) provides as follows:

"Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. "Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and

requester has a right to inspect any *record*.") (emphasis added). Thus, when faced with an open records request, the first step is to determine which requested items are records. *See Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶¶ 23–31, 300 Wis. 2d 290, 731 N.W.2d 240. Just because an item is a record, however, does not automatically guarantee release. A record need not be disclosed if it falls under one of the statutory or common law exceptions to disclosure. *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 11, 254 Wis. 2d 306, 646 N.W.2d 811. A record may also be withheld from the record requester if the public interest in nondisclosure outweighs the public interest in disclosure; this is known as the balancing test. *See id.*, ¶¶ 42–43.

¶ 175. I agree with the dissent and Justice Bradley that the e-mails at issue in this case are "records" as defined by Wis. Stat. § 19.32(2). An e-mail (specifically, the physical hard drive containing the e-mail's digital data) is unarguably "material on which . . . electromagnetic information is recorded or preserved . . . , which has been created or is being kept by an authority." § 19.32(2).[7] E-mails also do not fall under any of the statutory exclusions specified in § 19.32(2). *See* dissent, ¶ 206; Justice Bradley's concurrence, ¶ 151.

¶ 176. No party alleges that a statutory or common law exception to release of the records applies. I therefore move to the balancing test. Under the balancing test, we weigh the public interest in disclosure against the public interest in nondisclosure. *Milwaukee Journal Sentinel v. DOA*, 2009 WI 79, ¶ 55, 319 Wis. 2d 439, 768 N.W.2d 700. The balancing test must be

published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

[7] The lead opinion concedes this as well. *See* lead op., ¶ 56.

applied to each individual record. *Id.*, ¶ 56. Applying this test, the dissent concludes that there is "no public interest" in nondisclosure and a "strong public interest" in disclosure of these e-mails. Dissent, ¶¶ 228–29. I conclude otherwise.

¶ 177. It is important to remember the purpose and public policy underlying the open records law. The legislature does not leave us in the dark on this front. Wisconsin Stat. § 19.31 declares:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding *the affairs of government* and *the official acts of those officers and employees who represent them.* Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, *consistent with the conduct of governmental business.* The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied. (Emphasis added.)

¶ 178. This statute tells us that the open records law seeks to make widely available the records relating to "the affairs of government and the official acts of those officers and employees who represent them." While the legislature mandates a presumption of complete public access, the presumption is confined by the addendum, "consistent with the conduct of governmental business." Thus, the open records law declares that the public's interest inheres in *government* business, affairs, and official acts.

¶ 179. The lead opinion uses this public policy directive as grounds to create a new exclusion to the definition of a "record" wholly divorced from the text of § 19.32(2). *See* lead op., ¶¶ 76–86. I take this clear policy pronouncement as an expression of the reach of the public interest when applying the balancing test— weighing the public interest in disclosure against the public interest in nondisclosure.[8]

¶ 180. As I see it, the legislature has made clear that the public has no interest in the disclosure of records that are not reasonably related to the conduct of government affairs. Or put positively, the public interest extends only to records that reasonably bear upon public affairs. Accordingly, the public would normally have no interest in records relating to purely personal matters. This is not to say the public never has an interest in records relating only to personal matters. Such records are relevant to the conduct of government affairs when personal conduct violates state or federal law, for example, or when the records evince a violation of the public employer's internal policy. This accords with the purpose of sunshine laws such as the open records law—to ensure that government is behaving itself and spending our tax dollars legally and wisely.

¶ 181. On the other side, the public does have at least some interest in the nondisclosure of purely personal records. The public has an interest in providing some measure of privacy to public employees who make reasonable and lawful personal use of government resources. It is in the public's interest that public employees be permitted to efficiently and privately conduct limited personal business at work, just as many

---

[8] Justice Bradley adopts this approach as well. Justice Bradley's concurrence, ¶¶ 165–67.

private sector employees routinely do. The public also has an interest in the government's ability to hire and retain skilled employees. Some measure of privacy in conducting personal matters contributes at least in a small way to employee productivity and contentment. Some might be dissuaded from public service if they believed a private e-mail to their spouse—perfectly lawful and not in contravention of any employer policy—could be posted for all the world to see.[9]

¶ 182. The purpose of the open records law is to open a window into the affairs of government, not to open a window into the private lives of government employees. Therefore, where e-mails, either individually or cumulatively,[10] are of a purely personal nature and reflect no violation of law or policy, the public has no interest in such e-mails, and the public interest in nondisclosure will always outweigh the public interest in disclosure. Thus, the public has no interest in such things as a teacher's e-mail reflecting after-work plans, setting up a doctor's appointment, or securing baby-sitting for her children. If the e-mails reflected such activities as a teacher's romantic involvement with a student, campaigning for a politician using government resources, or abuse of the e-mail system in violation of the district policy, the public interest would undoubtedly be strong. Such a determination can only be made by reviewing each e-mail.

¶ 183. Accordingly, I agree with the lead opinion and Justice Bradley that "a custodian should not release

_____

[9] The lead opinion's analysis explains many of these interests as well. *See* lead op., ¶¶ 83–85.

[10] For example, while a singular e-mail itself might not violate any employer policy, it may be that a grouping of e-mails does constitute a violation (e.g., abuse of the e-mail system). At that point, the public interest in such e-mails becomes strong.

the contents of e-mails that are purely personal and evince no violation of law or policy." Lead op., ¶ 10 n.4.

II

¶ 184. This case is the first time this court has addressed the applicability of the open records law to personal e-mails. As such, I wish to further clarify the procedure that governs review of these kinds of record requests as established by our existing case law.

¶ 185. Our case law is clear that if the content of the records is unknown, and the record requester challenges the custodian's withholding of records, the circuit court conducts an *in camera* review. In *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470 (1965), this court explained as follows:

> The duty of first determining that the harmful effect upon the public interest of permitting inspection outweighs the benefit to be gained by granting inspection rests upon the public officer having custody of the record or document sought to be inspected. If he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection, it is incumbent upon him to refuse the demand for inspection and state specifically the reasons for this refusal. If the person seeking inspection thereafter institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.

*Id.* at 682 (footnote omitted). We affirmed this proce-

dure in *State ex rel. Morke v. Donnelly*, 155 Wis. 2d 521, 455 N.W.2d 893 (1990). We explained:

> *Youmans* shows that the *in camera* inspection assists the court in determining whether the harm to the public interest by allowing inspection outweighs the public interest in inspection. After reviewing the records *in camera*, the court may decide that only certain records or portions of a particular record should be released.

*Id.* at 531 (footnote omitted).

¶ 186. In this case, we similarly do not know the content of any of the e-mails. Under our cases and under § 19.37(1),[11] Bubolz can challenge the district's determination that the e-mails were personal, or that they evinced no violation of law or policy. If Bubolz chooses this route, the court must determine via *in camera* inspection whether the e-mails are personal in

---

[11] I am, of course, aware that this case was initiated by record subjects under § 19.356(1), and not record requesters under § 19.37. Justice Bradley accuses me of adding "confusion rather than clarity" by clarifying the rights of record requestors under this opinion and § 19.37. Justice Bradley's concurrence, ¶¶ 153, 157.

But the complicated nature of this case (represented by four different writings and no majority opinion) means that clarity in the actual operation of the principles we announce is critical. My efforts here are aimed at making sure the public knows that under our holding, it still can seek judicial review of withheld e-mails that the custodian determines are purely personal.

Though accusing me of "misconstruing" the lead opinion, and leaving "confusion" in my critique of the lead opinion's approach (*see infra* note 12), Justice Bradley appears to agree with my analysis regarding whether the e-mails here are records, the application of the balancing test, and the rights of record requesters under § 19.37. Her staunch defense of an opinion she does not join is all the more perplexing.

nature and, individually and cumulatively, whether they contain evidence of any violation of law or policy. If they are personal and do not contain evidence of any violation of law or policy, the balancing test always weighs in favor of nondisclosure. But this review process is important; without it, the people will be deprived of the transparency the legislature mandated in the public records law.[12]

¶ 187. For the foregoing reasons, I respectfully concur.

---

[12] The lead opinion's approach, had it been adopted by a majority of my colleagues, would have dramatically reduced the transparency of government and would sanction the withholding of government records in ways that are contrary to the purposes of the statute.

The lead opinion concludes that where the content of e-mails is purely personal and does not evince a violation of law or policy, such e-mails are not records under § 19.32(2). Lead op., ¶ 23. In addition to being unfaithful to the text of § 19.32(2), this approach would lead to results that should not go unnoticed. The lead opinion's approach would, as a practical matter, give record custodians the final say on whether withheld e-mails are records, including the determination of whether such documents violate any law or employer policy, and whether they are even personal e-mails at all.

Wisconsin Stat. § 19.35(4)(a) requires the custodian to "notify the requester" of a "determination to deny [a] request" "upon request for any *record.*" (Emphasis added.) The duty to notify a record requester of a withheld record is clear. *See, e.g., Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) ("If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue."). However, I can find no case suggesting a custodian must disclose the existence and nature of non-records. Under the current state of the law, it appears that a record custodian need only notify the record requester when it withholds a record, not when it withholds non-records.

¶ 188. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). The lead opinion prevents the public from viewing the workplace activities of Wisconsin Rapids School District (School District) employees (here, teachers) by creating an exception to the definition of "record" in the Public Records Law, Wis. Stat. § 19.32(2). This exception, when combined with the concurring opinions, grants government employees (here, teachers) a broad, blanket exception for e-mails that the teachers create in School District e-mail accounts, on School District computers, maintained by School District servers, when the teachers characterize their e-mails as "personal."[1] This broad exception prevents the public from discovering what public employ-

Unless the custodian voluntarily chose to provide notice of non-records he or she did not release, the record requester would have no knowledge anything was withheld. Thus, the lead opinion's approach would, as a practical matter, make the withholding of purely personal e-mails effectively unreviewable.

Moreover, under the public records statute, elected officials are the legal custodians of their own records and the records of their office. Wis. Stat. § 19.33(1). This means that under the lead opinion's approach, if a citizen sought e-mail records from, for example, the Governor or his office, the Governor could simply determine that certain e-mails are not records, and then not disclose the existence of those e-mails to the record requester. Such an outcome would constitute an unacceptable shutter over the window of transparency mandated by the legislature.

Thankfully, four members of this court conclude that such e-mails are public records. As such, the lead opinion's approach is not the law.

[1] This appeal does not involve personal e-mail accounts that may have been accessed from government computers, but which accounts are not maintained on government servers. No one has raised this issue, so I do not address it.

651

ees are doing during the workday, in the workplace, using equipment purchased with public funds. In so doing, the court contravenes Wisconsin's long history of transparency in and public access to actions of government employees. It is contrary to the letter and the spirit of the Public Records Law and is a disservice to the public's interest in government oversight. Because I conclude that these e-mails are records[2] and that the teachers have not met their burden to show that the public's interest in nondisclosure outweighs the public's interest in disclosure of these e-mails, I respectfully dissent.

## I. BACKGROUND

¶ 189. Don Bubolz (Bubolz), a citizen of the state of Wisconsin, sent the School District a public records request[3] for the e-mails of five named teachers in the School District. Bubolz requested the "e-mails from March 1, 2007 through April 13, 2007 in their entirety . . . from the computers [the teachers used] during their school work day."[4]

¶ 190. The School District notified the teachers that it intended to comply with Bubolz's request. The

---

[2] Both Justice Bradley's concurrence and Justice Gableman's concurrence conclude, as I do, that these e-mails fall within the Public Records Law's definition of "record." *See* Wis. Stat. § 19.32(2). Accordingly, a majority of the court holds that e-mails created in government e-mail accounts, on government computers, maintained by government servers are "records" subject to the Public Records Law.

[3] Wisconsin Stat. §§ 19.31 through 19.37 contain provisions of the Public Records Law. A request under the Public Records Law is often termed an "open records request."

[4] Amended Complaint and Request for Injunctive Relief, Exhibit A.

teachers then commenced this action in circuit court, seeking to enjoin the release of e-mails within government e-mail accounts that they characterized as "personal."[5]

¶ 191. The circuit court ordered the release of all of the requested e-mails, including those e-mails that the teachers characterized as "personal." The circuit court concluded that all of the e-mails were "records" within the definition of Wis. Stat. § 19.32(2) of the Public Records Law. The circuit court also applied the requisite Public Records Law balancing test[6] and concluded that the public interest in preventing the disclosure of the teachers' e-mails from government e-mail accounts did not outweigh the strong public interest favoring disclosure. The circuit court ordered the School District, prior to release, to redact from the e-mails any home addresses, telephone numbers, home e-mail addresses, social security numbers, medical information, bank account numbers and pupil record information.

¶ 192. The teachers appealed.

¶ 193. In his appellate brief, Bubolz, appearing pro se as the Intervenor-Respondent, explained that he requested the records because he wished to determine the extent and the quality of use of government computers and government e-mail services by the teachers

---

[5] The Teachers' Amended Complaint and Request for Injunctive Relief requested the circuit court enter "[a]n order enjoining the [School District] and their agents and employees from releasing the *personal emails*." (Emphasis added.)

[6] *See Milwaukee Journal Sentinel v. Wis. Dep't of Admin.*, 2009 WI 79, ¶¶ 54–55, 319 Wis. 2d 439, 768 N.W.2d 700 (explaining that, in the absence of a statutory or common law exception, the presumption favoring release may be overcome only when, in performing the balancing test, the public interest in non-disclosure outweighs the public interest in disclosure).

during the workday.[7] He explained that the School District has a "number of policies" with which he wanted to assess the teachers' compliance.[8] As an example, Bubolz pointed to "the policy regarding teacher involvement in political campaigns."[9] He explained that he "believes if the teachers' emails, sent or received, discussed school board members, school board proceedings, school board candidates or organizations supporting or opposing school board members or candidates," such e-mails would bear on that policy.[10] He asserts that without the ability to view the content of the teachers' e-mails, "the public [could not] bring [concerns] to the attention of an administration."[11]

¶ 194. The School District has a written policy, "365.1 Network and Internet Acceptable Use Policy," for use of its e-mail accounts. That policy states in relevant part:

> Users of the WRDN[, Wisconsin Rapids District Network,] *should not* assume that information stored and/or transmitted is confidential or secure.
>
> . . .
>
> All district assigned e-mail accounts are owned by the district and, therefore, are not private. Messages received by the e-mail system are retained on the system until deleted by the recipient. . . .
>
> Occasional personal use of e-mail is permitted, but limited to times which do not interfere with the user's responsibilities.[12]

---

[7] Intervenor-Respondent's Brief, 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.* at 2.

[12] 365.1 Network and Internet Acceptable Use Policy, 300–104, 300–111.

To use the School District's internet system, School District employees must sign a form "acknowledg[ing] that e-mail messages and Internet usage are not private and recogniz[ing] that all employee's activities on the WRDN may be monitored."[13] Part of that acknowledgement provides:

[A]ccess to the WRDN and the Internet has been developed to support the district's educational responsibilities and mission. . . .

By signing below I acknowledge that e-mail messages and Internet usage are not private and recognize that all employee's activities on the WRDN may be monitored.[14]

¶ 195. The lead opinion asserts that "[n]o allegation of improper use is at issue here."[15] The lead opinion further asserts: "The School District and the Teachers agree that the Teachers did not violate the School District's written Internet Use Policy or Guidelines and that the content of the e-mails at issue is of a purely personal nature, with no connection to a government function."[16] Similarly, Justice Bradley's concurring opinion asserts that the parties concede that the e-mails at issue in this case are purely "personal and evinces no violation of law or policy."[17] However, neither Bubolz, the Intervenor-Respondent who requested these records, nor the School District agrees with the lead

---

[13] WRDN Employee Acknowledgement and Waiver, 300–114.

[14] *Id.*

[15] Lead op., ¶ 13.

[16] *Id.*

[17] Justice Bradley's concurrence, ¶ 148.

opinion's and Justice Bradley's concurring opinion's characterization.[18]

¶ 196. First, Bubolz asserts that "this entire case is an attempt by the [Wisconsin Education] Association [Council and counsel for the teachers,] to narrowly define Wisconsin's [Public] Records Law to allow public employees on their taxpayer paid work time to conduct personal business without any monitoring or accountability to the public or taxpayers."[19] Bubolz also states: "To try to distinguish some duties as personal and not official would relegate [teachers] to a 'punch clock' status and make accountability in schools impossible because anytime they would do something inappropriate, they would simply state they were acting on personal time and outside the realm of their official duties."[20] Finally, Bubolz contends that "whenever the teacher is on taxpayer paid time during their paid workday, they are performing official duties."[21]

¶ 197. Turning to the School District's position, in its answer to the teachers' amended complaint, the

---

[18] The assertion made by the lead opinion and Justice Bradley's concurring opinion that it is undisputed that the e-mails at issue are purely personal impacts their opinions in different ways. The lead opinion creates an exception to Wis. Stat. § 19.32(2)'s definition of "record" for purely personal e-mails. Lead op., ¶ 23. Conversely, Justice Bradley concludes, as I do, that the e-mails fall within the statutory definition of records. Justice Bradley's concurrence, ¶ 151. However, in conducting the balancing test, Justice Bradley asserts that the public interest in nondisclosure *will always* outweigh the public interest in disclosure of purely personal e-mails that evince no violation of law or policy. *Id.*, ¶ 167. I disagree.

[19] Intervenor-Respondent's Brief, 3.

[20] *Id.* at 4.

[21] *Id.*

School District denied that it notified the teachers that it would release "personal emails," and instead asserted that it notified the teachers that it "would release records responsive to the request." Moreover, in its brief to this court, the School District asserted: "The materials at issue pertain to the business of the public entity."[22] It explained: "It is [] not apparent from current Wisconsin law that emails sent by public employees on public resources during public time are not of public interest."[23] These statements contradict the lead opinion's repeated assertion that "[i]t is [] *uncontested* that the contents of the e-mails at issue do not relate to the school district or government affairs or any official actions of the Teachers or other public officers or employees or the conduct of governmental business."[24]

¶ 198. We may accept parties' stipulated facts. *See Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 4, 309 Wis. 2d 541, 749 N.W.2d 581. However, as we just explained, the parties in this case have not stipulated, nor do they agree, to the fact that the e-mails do not relate to governmental affairs.

¶ 199. As stated, the lead opinion and Justice Bradley's concurring opinion repeatedly assert that there is nothing in these e-mails that relates in any way to the teachers' employment.[25] This assertion is made in the absence of an agreement by all the parties and

[22] Defendant-Respondent's Brief, 8.

[23] *Id.* at 10.

[24] Lead op., ¶ 30 (emphasis added); *see also Id.*, ¶ 23 ("In the instant case, the contents of the Teachers' personal e-mails have no connection to a government function . . . .").

[25] *Id.*, ¶ 30, passim; Justice Bradley's concurrence, ¶ 148, passim.

based on a record that does not contain the e-mails at issue. Accordingly, there is nothing in the record that would allow any member of this court to base a decision on the content, number or length of the e-mails, or the time of day when the e-mails were created, all of which are necessary to determine whether the e-mails relate to the teachers' employment.

## II. DISCUSSION

### A. Standard of Review

¶ 200. This case presents questions of statutory interpretation and application. We interpret and apply statutes independently of the previous court decision, but benefitting by its analysis. *Milwaukee Journal Sentinel v. Wis. Dep't of Admin.*, 2009 WI 79, ¶ 14, 319 Wis. 2d 439, 768 N.W.2d 700 (citing *Blunt v. Medtronic, Inc.*, 2009 WI 16, ¶ 13, 315 Wis. 2d 612, 760 N.W.2d 396). Applying the balancing test prior to the disclosure of public records is also a question of law for our independent review; however, we benefit from the circuit court's discussion of the balance it conducted. *Id.* (citing *Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 784, 546 N.W.2d 143 (1996)).

### B. General Principles of Statutory Interpretation

¶ 201. This case requires us to interpret and apply Wisconsin's Public Records Law statutes. "Statutory interpretation begins 'with the language of the statute.' " *Cnty. of Dane v. LIRC*, 2009 WI 9, ¶ 21, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110). Statutory language "is given its common, ordinary, and accepted meaning."

*Kalal,* 271 Wis. 2d 633, ¶ 45. If a statute's meaning is plain, "then there is no ambiguity, and the statute is applied according" to its terms. *Id.,* ¶ 46 (internal quotations and citation omitted). However, if a statute "is capable of being understood by reasonably well-informed persons in two or more senses," the statute is ambiguous, and we may consult extrinsic sources, such as legislative history, to discern the meaning of the statute. *Id.,* ¶¶ 47–48.

¶ 202. Statutes are not interpreted in a vacuum. Rather, we interpret them in the context in which the legislature placed them. *Spiegelberg v. State,* 2006 WI 75, ¶ 17, 291 Wis. 2d 601, 717 N.W.2d 641. Furthermore, when the legislature has set out the purpose of a statute, we interpret the statute so as to fulfill its stated purpose. *Cnty. of Dane,* 315 Wis. 2d 293, ¶ 34 (citing *Johnson v. Wis. Lumber & Supply Co.,* 203 Wis. 304, 310, 234 N.W. 506 (1931)).

## C. Wisconsin Stat. § 19.32(2)

¶ 203. The lead opinion turns on its creation of an exception to the Public Records Law's definition of "record." "Record" is defined in Wis. Stat. § 19.32(2). Section 19.32(2) provides:

> *"Record" means any material* on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, *regardless of physical form or characteristics,* which has been created or is being kept by an authority. *"Record" includes, but is not limited to,* handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. *"Record" does not include* drafts, notes, preliminary computations and like materials prepared for the

originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

(Emphasis added.)

¶ 204. The lead opinion seems to agree that e-mails are "records" within the definition of Wis. Stat. § 19.32(2).[26] However, it then narrowly construes "record" to create an exception for e-mails that it characterizes as "personal."[27] That construction is incorrect as a matter of law for at least three reasons: (1) it contravenes the plain meaning of the statute; (2) it impairs Wisconsin's long history of open and accountable government; and (3) it creates a content-based exception from the Public Records Law for e-mails that are not in the record and, therefore, no member of this court has seen their content. Neither Bubolz, the public records requester, nor the School District agrees the e-mails have no connection to the teachers' employment.

 1. Plain meaning of Wis. Stat. § 19.32(2)

¶ 205. Wisconsin Stat. § 19.32(2) defines "record" in broadly stated terms. It unambiguously defines

---

[26] Lead op., ¶ 56, passim ("The Teachers and the School District agree, as do we, that e-mails can fall within the first part of Wis. Stat. § 19.32(2)'s description of materials that may be 'records.' ").

[27] *Id.*, ¶ 136, passim ("If the content of the e-mail is solely personal, it is not a record under the Public Records Law and the e-mail cannot be released.").

"record" as "any material . . . regardless of physical form or characteristics." The statute also explains that the types of records that are listed are merely examples, not limitations on the broad definition the legislature chose. The statute does so by stating that "[r]ecord includes, but is not limited to" the list of examples that follows the introductory phrase.

¶ 206. Subsection (2) of Wis. Stat. § 19.32 also contains a discrete list of exceptions to the preceding statutory definition of "record." I agree with the lead opinion's discussion of why e-mails are not included within any of the exceptions listed in § 19.32(2).[28] However, subsec. (2)'s discrete list of exceptions from the definition of "record" strengthens the unambiguous breadth of the legislative definition of record. Stated otherwise, if the legislature had intended to exclude "personal" e-mails, it would have included that exception in subsec. (2)'s discrete list of exceptions. It did not do so.

¶ 207. Furthermore, we interpret statutes in the context in which the legislature has placed them. *Richards,* 309 Wis. 2d 541, ¶ 20. Placed in context, the definition of "record" set out in Wis. Stat. § 19.32(2) must be compared with subsec. (2)'s discrete list of exceptions from the term "record." Subsection (2) establishes a broad reach in defining "record" under the Public Records Law by explicitly providing that the list in subsec. (2) of what constitutes a record is "not limited to" the examples listed. Accordingly, the list in subsec. (2) is by way of example only and not by way of limitation. However, the exceptions to that broad definition, also contained in subsec. (2), have no introductory phrase that suggests that the exceptions include,

---

[28] *E.g., id.,* ¶¶ 62–68.

but are not limited to, those exceptions enumerated. The absence of such an introductory phrase suggests that the exceptions chosen by the legislature are a discrete list not to be expanded.

¶ 208. In addition, when the legislature states the purpose that it expects legislation to accomplish, we interpret the affected statutes to "best promote [that] statutory purpose[]." *Cnty. of Dane,* 315 Wis. 2d 293, ¶ 34. In establishing Wisconsin's Public Records Law, the legislature unambiguously stated its purpose. *See* Wis. Stat. § 19.31. It did so by establishing that construction of the Public Records Law must be undertaken *"in every instance with a presumption of complete public access."* § 19.31 (emphasis added).

¶ 209. As we have explained, the "statement of public policy in § 19.31 is one of the strongest declarations of policy to be found in the Wisconsin statutes." *Zellner v. Cedarburg Sch. Dist.,* 2007 WI 53, ¶ 49, 300 Wis. 2d 290, 731 N.W.2d 240. Given the significant role that teachers play in our society, the public has a very strong interest in all of their activities in the workplace. *See id.,* ¶ 53 ("Public school teachers . . . are in a significant position of responsibility and visibility. . . . They are entrusted with the responsibility of teaching children, and the public has an interest in knowing about such allegations of teacher misconduct and how they are handled."); *Linzmeyer v. Forcey,* 2002 WI 84, ¶ 28, 254 Wis. 2d 306, 646 N.W.2d 811.

¶ 210. In *Fox v. Bock,* 149 Wis. 2d 403, 438 N.W.2d 589 (1989), we examined a claimed exception from record disclosure. We addressed a claim that a report of a study prepared by a third party was not a "record" within the meaning of the Public Records Law. *Id.* at 405. In concluding that the report was a record, we reasoned that the "term 'record' is broadly defined in

sec. 19.32(2)." *Id.* at 410. We also explained that "[a]ny exceptions to the general rule of disclosure must be narrowly construed." *Id.* at 411 (citing *Hathaway v. Green Bay Sch. Dist.,* 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984)).

¶ 211. I conclude that the lead opinion's creation of a broad exception to the Public Records Law—the exclusion of e-mails that government employees characterize as "personal"[29]—contravenes the plain meaning of "record" as defined by the legislature. Wis. Stat. § 19.32(2). The lead opinion changes the word "personal" into the word "private" in contravention of Wisconsin's long history of open and accessible oversight of government employees' actions.

### 2. Open and accountable government

¶ 212. Wisconsin has a long history of holding public employees accountable through providing complete public access to records that will assist in the public's review. *Zellner,* 300 Wis. 2d 290, ¶ 49. As stated, the legislative purpose of the Public Records Law is set out in Wis. Stat. § 19.31. Because of the strong legislative commitment to open and transparent government embodied in Wisconsin's Public Records Law, it is appropriate to fully set out and discuss the legislature's policy objective. Section 19.31 provides:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent

---

[29] Lead op., ¶ 141.

them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

¶ 213. The legislature's statement that Wis. Stat. "ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access," was not followed in the lead opinion. *See* Wis. Stat. § 19.31. The lead opinion accords no presumption of access to the requested emails.

¶ 214. There is nothing ambiguous in the legislative directive of "complete public access." All e-mails in the School District's e-mail account should be released, unless there is an exception in Wis. Stat. § 19.32(2). § 19.31; *Fox,* 149 Wis. 2d at 410–11.

¶ 215. Any exception to the general presumption of complete disclosure must be narrowly construed. *Zellner,* 300 Wis. 2d 290, ¶ 31 ("[S]tatutory exceptions 'should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed.' " (quoting *Fox,* 149 Wis. 2d at 411)); *Hathaway,* 116 Wis. 2d at 397. It is "contrary to general well established principles of freedom-of-information statutes to hold that, *by implication only,* any type of record can be held from public inspection." *Hathaway,* 116 Wis. 2d at 397 (emphasis added).

¶ 216. Here, there is no statutory language excepting any type of e-mail from disclosure. Despite this, the lead opinion creates a broad, blanket exception for all emails in the School District's e-mail account, based solely on the teachers' allegation that the e-mails are "personal." The lead opinion has crafted its exception "by implication only," *id.*, when it concludes that for an e-mail to be a "record" under Wis. Stat. § 19.32(2), it must involve the carrying on of governmental business.[30] There is nothing in Wis. Stat. ch. 19 that supports this interpretation. Indeed, claims have been filed against government employees based on the allegation that government computers were being used for purposes other than government business.[31]

¶ 217. And finally, why does the Public Records Law state that there is a presumption of complete public access? It does so to enable the public to see for itself what is going on in government work places. The lead opinion shuts down this public access whenever public employees characterize their emails as "personal." It is not possible to accord public oversight of government employees' activities when those same government employees decide what the public is permitted to see.

### 3. Content-based exception

¶ 218. Throughout the lead opinion, it repeats that whether an e-mail is a record within the meaning of the Public Records Law depends on the content of the

---

[30] Lead op., ¶ 22, passim.

[31] *See, e.g., State v. Jensen,* 2004 WI App 89, ¶ 93, 272 Wis. 2d 707, 681 N.W.2d 230, *subsequent appeal at State v. Jensen,* 2009 WI App 26, 316 Wis. 2d 377, 762 N.W.2d 833, *rev'd State v. Jensen,* 2010 WI 38, 324 Wis. 2d 586, 782 N.W.2d 415.

email.[32] This is a curious position for justices that have never read any of the e-mails. As stated, the e-mails are not in the record, so there is no means by which any justice could know the content of the e-mails.

¶ 219. Some courts in other jurisdictions have applied a content-based analysis to freedom-of-information types of requests, but they have made a decision about whether the material should be released only after an in camera review of the emails under consideration. *See, e.g., Associated Press v. Canterbury,* 688 S.E.2d 317, 322–23 (W. Va. 2009) (concluding that the trial court properly ordered the e-mails at issue produced for an in camera review of their content).

¶ 220. The lead opinion also supports its content-based exception by stating that those "personal e-mails include such messages as an e-mail from a teacher to her spouse about child care responsibilities and an e-mail from a friend to a teacher regarding social plans."[33] The lead opinion errs. No justice has seen any of the e-mails at issue; they are not in the record. Therefore, there is no way any member of this court can provide examples of what the emails say. Notwithstanding this lack of knowledge, a majority of this court relates what the emails say.

¶ 221. Here, Bubolz, the records requester and a party to this action,[34] alleges that the teachers are attempting to preclude him from reviewing the extent and quality of use of School District computers and

---

[32] Lead op., passim.

[33] Lead op., ¶ 29.

[34] The three justices who participate in the lead opinion and Justice Bradley in her concurring opinion rely on an asserted knowledge of the emails' content.

e-mail services during the workday.[35] He explains that he "believes if the teachers' e-mails, sent or received, discussed school board members, school board proceedings, school board candidates or organizations supporting or opposing school board members or candidates," he should be able to learn of it.[36] The School District agrees that if the e-mails demonstrate "excessive personal usage" of District e-mail accounts during the workday "the public's interest may then be implicated."[37] I, too, agree with Bubholz.

¶ 222. While one could assert that those types of e-mails are personal in nature[38] because the teachers are doing things outside of their jobs duties, one could also assert that it is not proper for teachers to be campaigning for school board candidates or members using School District e-mail accounts and computers during the workday.[39] However, there is no way of knowing what is going on here because the lead opinion

---

[35] Intervenor-Respondent's Brief, 2.

[36] *Id.* at 3. The lead opinion misstates its knowledge of the content of the emails when it says, "None of the e-mails at issue here relate to school board candidates." Lead op., ¶ 26 n.10. Neither Chief Justice Abrahamson, who authored the lead opinion, nor any other justice has seen the teachers' emails. Therefore, there is no basis on which to make such a statement. It is unfair to the public to make statements of material fact about which the court has no knowledge.

[37] Defendant-Respondent's Brief, 12.

[38] As I have already noted, a "personal" e-mail is not necessarily a "private" e-mail. The School District's policy on e-mail usage gives notice that the e-mail accounts are not private and may be monitored.

[39] As I related above, Bubolz's appellate brief, raises this concern. Query, what is to prevent a government employee who is campaigning through the use of governmental e-mails from

prevents the public from learning the content of the teachers' e-mails and how often they are using School District e-mail accounts and computers for non-job related tasks.

## D. Balance

¶ 223. Since I have concluded that e-mails created in School District e-mail accounts on School District computers during the workday do not fall within an exception to the statutory definition of "record" contained in Wis. Stat. § 19.32(2), but rather that they are records covered by the Public Records Law, I must determine whether the circuit court properly applied the balancing of interests test. *See Milwaukee Journal Sentinel,* 319 Wis. 2d 439, ¶¶ 54–55.

¶ 224. This balancing involves weighing "the public interest in disclosure against the public interest in non-disclosure." *Id.,* ¶ 55. In balancing these interests, there generally are no " 'blanket exceptions from release.' " *Id.,* ¶ 56 (quoting *Linzmeyer,* 254 Wis. 2d 306, ¶ 10). Furthermore, there is a strong legislatively established presumption in favor of disclosure. *Hempel v. City of Baraboo,* 2005 WI 120, ¶ 63, 284 Wis. 2d 162, 699 N.W.2d 551. Only in an "exceptional case" will nondisclosure be appropriate. *Id.* This presumption of disclosure is one of the strongest in the Wisconsin statutes. *Zellner,* 300 Wis. 2d 290, ¶ 49. To overcome this presumption, the person opposing disclosure has the burden to show a compelling public interest in nondisclosure. *Local 2489, AFSCME, AFL-CIO v. Rock Cnty.,* 2004 WI App 210, ¶ 27, 277 Wis. 2d 208, 689 N.W.2d 644.

---

characterizing those e-mails as "personal," thereby excluding them from disclosure when a public records request is made for e-mails.

¶ 225. Here, the teachers assert they have a personal privacy interest in preventing disclosure that rises to the level of a public interest. The teachers cite two cases protecting the privacy of phone conversations and personal letters delivered to the school as supportive of their interests here. *Fischer v. Mt. Olive Lutheran Church, Inc.*, 207 F. Supp. 2d 914 (W.D. Wis. 2002); *Watkins v. L.M. Berry & Co.*, 704 F.2d 577 (11th Cir. 1983). They assert that "[i]f a teacher makes a personal phone call at lunch time on the school phone, she does not waive all expectation of privacy in her phone conversation[,] . . . [and] [i]f a teacher receives a personal letter in his school mailbox, he does not waive all expectation of privacy in his [] mail."[40]

¶ 226. I am not persuaded. First, the teachers have been informed by the School District's policy 365.1 on network and internet usage that they "*should not* assume that information stored and/or transmitted is confidential or secure."[41] Second, each teacher was required to sign the following acknowledgement: "By signing below I acknowledge that e-mail messages and Internet usage are not private and recognize that all employee's activities on the WRDN may be monitored." Therefore, there can be no expectation of privacy in these emails. Neither of the cases cited by the teachers involved a similar policy and acknowledgement.

¶ 227. Furthermore, even though individual privacy concerns may rise to the level of a public interest, the teachers have made no such showing here. As the court of appeals has explained, "[w]hen individuals become public employees, they necessarily give up

[40] Plaintiffs-Appellants' Brief, 18.
[41] 365.1 Network and Internet Acceptable Use Policy, 300–104.

certain privacy rights and are subject to a degree of public scrutiny." *Local 2489,* 277 Wis. 2d 208, ¶ 26 (citing *Wis. Newspress,* 199 Wis. 2d at 786–87).

¶ 228. Accordingly, I conclude that the teachers have identified no public interest that will be served by the blanket exception from the Public Records Law they assert herein, given that the circuit court ordered the School District, prior to release, to redact from the e-mails any home addresses, telephone numbers, home e-mail addresses, social security numbers, medical information, bank account numbers and pupil record information.

¶ 229. Furthermore, the teachers' privacy concern, if it were to rise to the level of a public interest, is balanced against the strong public interest in disclosure of the activities of public employees in the workplace. *See Zellner,* 300 Wis. 2d 290, ¶ 49. It is also considered with regard to our recent affirmation that the Public Records Law is generally not amenable to blanket exceptions, *Milwaukee Journal Sentinel,* 319 Wis. 2d 439, ¶ 56, 768 N.W.2d 700, such as the lead opinion has attempted to create here for all e-mails it labels "personal." Therefore, even if I were to presume that the content of the e-mails do not involve work-related matters, I agree with the circuit court that the teachers have not overcome the statutory presumption of full disclosure and complete public access and, therefore, the e-mails should be provided pursuant to Bubolz's request.[42] Accordingly, I would affirm the circuit court order releasing the e-mails.

---

[42] I, like every other justice, have not seen the e-mails. However, the presumption in favor of complete public access must be overcome by a compelling public interest in nondisclosure. *Local 2489, AFSCME, AFL-CIO v. Rock Cnty.,* 2004 WI App 210, ¶ 26, 277 Wis. 2d 208, 689 N.W.2d 644 (citing *Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls,* 199 Wis. 2d

## III. CONCLUSION

¶ 230. The lead opinion prevents the public from viewing the workplace activities of School District teachers by creating an exception to the definition of "record" in the Public Records Law, Wis. Stat. § 19.32(2). This exception, when combined with the concurring opinions, grants government employees, here, teachers, a broad, blanket exception for e-mails that the teachers create in School District email accounts, on School District computers, maintained by School District servers, when the teachers characterize their e-mails as "personal." This broad exception prevents the public from discovering what public employees are doing during the workday, in the workplace, using equipment purchased with public funds. In so doing, the court contravenes Wisconsin's long history of transparency in and public access to actions of government employees. The lead opinion is contrary to the letter and the spirit of the Public Records Law and is a disservice to the public's interest in government oversight. Because I conclude that these e-mails are records and that the teachers have not met their burden to show that the public's interest in nondisclosure outweighs the public's interest in disclosure of these e-mails, I respectfully dissent.

¶ 231. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins in this dissent.

768, 786–87, 546 N.W.2d 143 (1996)). The teachers have identified no compelling public interest.-